James **GREEN** and Prince Ella Green, Appellants,

v.

**MIDLAND MORTGAGE CO.** and Barrett Burke Wilson Castle Daffin & Frappier, LLP, Appellees.

No. 14–09–01036–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 12, 2011.

Okon J. Usoro, Houston, TX, for appellants.

Shelley Luan Deramus Douglass, Addison, TX, Steven A. Leyh, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION

ADELE HEDGES, Chief Justice.

In six issues, appellants, James and Prince Ella Green ("the Greens"), challenge the trial court's order granting summary judgment in favor of appellees, Midland Mortgage Co. ("Midland") and Barrett Burke Wilson Castle Daffin & Frappier, LLP ("Barrett Burke"), on their breach of contract counterclaim.[1] We affirm.

### I. Factual and Procedural Background

During the time period relevant to this appeal, the Greens owned several properties, including one located in Texas City known as the 4th Street property.[2] Cenlar Federal Savings Bank ("Cenlar") was the servicing agent for the loan secured by the 4th Street property. According to the Greens, they sold the 4th Street property on September 29, 1995, subject to the mortgage held by Cenlar.

On December 4, 1995, the Greens filed for Chapter 13 bankruptcy. The bankruptcy court granted the Greens a discharge on July 12, 2000. The Greens claim that the debt owed to Cenlar on the 4th Street property was discharged in the bankruptcy. Cenlar later sold the loan to Aurora Loan Services, LLC ("Aurora"), and Aurora subsequently sold the loan to Midland. The Greens claim that despite the debt's having been discharged, Cenlar, Aurora, and Midland continued to report the alleged debt to credit bureaus as delinquent.

On February 1, 2008, the Greens sued Midland, Cenlar, and Aurora, alleging numerous causes of action based on the events described above.[3] On August 12,

1. In their brief, appellees state that Barrett Burke Wilson Castle Daffin & Frappier, LLP is now known as Barrett Daffin Frappier Turner & Engel, LLP. For clarity, we will refer to this party as Barrett Burke.

2. Although the history of events giving rise to this suit is lengthy and convoluted, a review of the background facts is helpful to a proper discussion of the appeal.

3. The Greens asserted claims under the Texas Deceptive Trade Practices Act, the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Texas Debt Collection Act, the United States Bankruptcy Code, as well as common law claims of fraud, negligence, neg-

2008, they amended their petition to add Barrett Burke, Midland's counsel, as a defendant.[4]

In early 2009, Steve Leyh, Midland and Barrett Burke's attorney, discussed settlement of the Greens' claims with Michael Weston, the Greens' attorney. On April 3, 2009, Weston sent the following e-mail to Leyh:

> Steve—
>
> While we are waiting to get the terms finalized, please confirm that we have a deal to settle this case for 40K. Please advise.
>
> Thanks,
>
> Mike

That same day, Leyh responded to Weston in an e-mail stating, in pertinent part, as follows:

> Yes we have a settlement. BDF and Midland pay the Greens a total sum of $40,000.00, mutual releases of all claims known and unknown in full from dawn of time until day of execution, case dismissed with prejudice, serious confidentiality provision, Green's [sic] stop all "administrative" remedies, Midland never credit reports on the Greens again, and the remaining details to be worked out later on, in formal settlement documents.
>
> \* \* \*

Less than an hour later, Weston replied to Leyh, in part, as follows:

> Great, clients have agreed to those terms. \* \* \* \*

In response to Leyh's request, Midland and Barrett Burke received an executed W–9 form from Weston and prepared a settlement check on April 28, 2009. On April 30, 2009, Mr. Green sent an e-mail to Weston stating that he had reviewed the draft settlement agreement and release, he had found "a couple of clerical errors," he would review the document again and get back to Weston, and there were some items he would like to add to the agreement.

On May 6, 2009, Leyh and Weston signed a Rule 11 agreement which stated, in relevant part, as follows:

> Dear Mike,
>
> This letter is a Rule 11 agreement to be filed in the case to advise the court, that [Midland and Barrett Burke] and [the Greens] have settled claims between them in this matter.
>
> The parties are currently working on settlement documents and expect to have those resolved in the near future.

The Rule 11 agreement was filed with the court on May 7, 2009.

On May 11, 2009, Mr. Green sent an e-mail to Weston notifying him that he and Mrs. Green did not want to settle with Midland and Barrett Burke. On May 14, 2009, Leyh sent a draft of the settlement agreement and release to Weston which incorporated the edits requested by the Greens. In a letter dated May 23, 2009, the Greens asked Weston to withdraw as their attorney in the case, and Weston subsequently withdrew.

When Midland and Barrett Burke learned that the Greens no longer intended to execute the agreement, they each filed a second amended answer on June 10, 2009, in which they asserted a counterclaim for breach of contract and sought enforcement of the settlement agreement. On June 10, 2009, Midland and Barrett Burke moved for summary judgment on their counterclaim; on August 13, 2009, they filed an amended summary judgment

---

ligent misrepresentation, breach of contract, conspiracy, and defamation.

4. On May 20, 2009, Cenlar and Aurora were nonsuited.

motion. On September 4, 2009, the trial court granted appellees' amended motion and ordered enforcement of the agreement. This appeal followed.

## II. Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). The party moving for a traditional summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004); Tex.R. Civ. P. 166a(c). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). In reviewing a summary judgment motion, we indulge every reasonable inference from the evidence in favor of the non-movant, resolve any doubts arising from the evidence in its favor, and take as true all evidence favorable to it. *Malcomson Rd. Util. Dist. v. Newsom,* 171 S.W.3d 257, 263 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

## III. Analysis

### A. Rule 11 Agreement

■ In their first issue, the Greens contend that the Rule 11 agreement is invalid and cannot support enforcement of the settlement agreement. In their third issue, the Greens claim that they raised an affirmative defense sufficient to defeat summary judgment. In their fourth issue, they assert that there are genuine issues of material fact precluding summary judgment. Because these arguments are intertwined, we address them together.[5]

■ Under Texas Rule of Civil Procedure 11, no agreement between the attorneys or parties to a suit is enforceable unless it is in writing, signed, and filed with the papers as part of the record, or unless it is made in open court and entered of record. *See* Tex.R. Civ. P. 11.[6] A settlement agreement must comply with Rule 11 to be enforceable. *See Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex.1995). To satisfy the "in writing" component of Rule 11, the contract principles that are used in determining whether a "writing"

---

**5.** Midland and Barrett Burke contend that Mr. Green has not raised any issue for review because he did not sign the appellate brief filed in this appeal. *See* Tex.R.App. P. 9.1(b) (requiring parties not represented by counsel to sign all documents filed with court). While it is true that Mr. Green's signature does not appear at the bottom of the brief, his signature on the accompanying certificate of service is sufficient to satisfy the requirements of Texas Rule of Appellate Procedure 9.1(b). *See Chavez v. State,* 08–02–00008–CR, 2003 WL 68172, at *1 (Tex.App.-El Paso Jan. 9, 2003, no pet.) (finding that although pro se appellant had not signed notice of appeal, he had signed certificate of mailing that accompanied notice and, thus, notice of appeal was "signed" within meaning of TRAP 9.1(b)).

**6.** To prevail on their breach of contract counterclaim, Midland and Barrett Burke had to show (1) a valid contract, (2) that they per-

formed or tendered performance, (3) that the Greens breached the contract, and (4) that they sustained damages as a result of the breach. *See B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). In their summary judgment response as well as their appellate brief, the Greens challenge only the first element of appellees' counterclaim, *i.e.,* the validity of the settlement agreement. Having failed to present any argument or cite to any authority regarding the remaining elements, the Greens have waived any argument as to those elements on appeal. *See* Tex.R.App. P. 38.1(f), (i); *see also Canton–Carter v. Baylor College of Medicine,* 271 S.W.3d 928, 930 (Tex.App.-Houston [14th Dist.] 2008, no pet.) ("In the review of a civil case, an appellate court has no discretion to consider an issue not raised in an appellant's brief.").

satisfies the statute of frauds apply equally to Rule 11 agreements. *See id.* Thus, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Id.* (quoting *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978)). The written memorandum, however, need not be contained in one document. *Id.*

*Padilla v. LaFrance* is dispositive in this case. In *Padilla,* the parties had exchanged a series of letters regarding terms of a settlement while a lawsuit was pending against Enrique Padilla. *See* 907 S.W.2d at 455. Padilla claimed that the letters represented a written settlement between the parties and asked the trial court to enforce the agreement. *See id.* at 457. The plaintiffs, however, contended that there was no written agreement between the parties. *See id.*

The Texas Supreme Court concluded that the series of letters between the parties were sufficient to constitute an agreement in writing satisfying Rule 11. *See id.* at 460. In doing so, the Court noted that the letters specifically confirmed a settlement agreement between the parties and contained all the material terms of the agreement: an agreement to pay a specified sum of money in exchange for the settlement of all claims. *See id.* at 460–61.

■ Here, the series of e-mails between Weston and Leyh dated April 3, 2009 and the Rule 11 letter dated May 6, 2009, similarly confirmed a settlement agreement between the parties. In answer to Weston's e-mail to Leyh requesting that Leyh "please confirm that we have a deal to settle this case," Leyh responded "[y]es, we have a settlement." Weston then replied "[g]reat, clients have agreed to those terms." Further, the Rule 11 letter signed by Weston and Leyh, and filed with the court the following day, stated that the parties had settled the Greens' claims. Moreover, the e-mail exchange reflects all the material terms of the agreement: Midland and Barrett Burke agreed to pay the Greens $40,000 in exchange for the settlement and release of all claims between the parties.

The Greens also contend that the Rule 11 letter is invalid because (1) they did not sign the letter; (2) the letter is not a sworn document; (3) the settlement agreement was ambiguous; (4) the Rule 11 letter was not executed and delivered; and (5) Weston did not have authority to bind them to a settlement agreement.

■ First, the Greens' arguments that the Rule 11 agreement is invalid because the Greens did not sign it, and Weston lacked the authority to bind them, are without merit. Although the Greens asked Weston to withdraw from the case in a letter dated May 23, 2009, the undisputed evidence reflects that he was their attorney of record at the time the April 3, 2009 e-mails between Weston and Leyh were exchanged, when the Rule 11 agreement was signed and filed with the court, and when the mutual release was drafted and corrections were requested and made in early May 2009. "The attorney-client relationship is an agency relationship[;] the attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts[.]" *Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690, 693 (Tex.1986). Thus, an attorney may execute an enforceable Rule 11 agreement on his client's behalf. *See In re R.B.,* 225 S.W.3d 798, 803 (Tex.App.-Fort Worth 2007, no pet.). Here, Weston executed the Rule 11 agreement on his clients' behalf; the Greens' signatures were not required. *See id.*

Second, the Greens' contention that the Rule 11 agreement is invalid because it is not a sworn document is equally unavailing. The Greens have cited no authority for their assertion that a Rule 11 agreement must be sworn, and we are not aware of any.

 Third, as to their assertion that the underlying settlement agreement is ambiguous, the Greens neither identify which terms of the agreement they believe are ambiguous, nor provide any argument or citation to legal authority in support of their position. Having failed to adequately brief this issue on appeal, the Greens have waived error. *See* Tex.R.App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Lundy v. Masson*, 260 S.W.3d 482, 503 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (concluding that appellant failed to provide argument or cite authority for contention on appeal and appellate court was "not required to do the job of the advocate").[7]

Fourth, the Greens' claim that the underlying settlement agreement is unenforceable because it was not executed and delivered is without merit. The Rule 11 agreement confirming that the parties had reached a settlement—the terms of which had been previously set forth in the e-mail exchange between Weston and Leyh—was signed by Leyh and Weston, acting in his capacity as the Greens' attorney, and was filed with the court on May 7, 2009.

We conclude that the series of e-mails between Weston and Leyh and the Rule 11 agreement were sufficient to constitute an agreement in writing satisfying Rule 11 and support enforcement of the settlement agreement. We overrule issues one, three, and four.

### B. Evidentiary Hearing

In their second issue, the Greens argue that the trial court was required to conduct an evidentiary hearing before ruling on appellees' summary judgment motion. We disagree. We initially note that the hearing contemplated by summary judgment procedure need not be oral, but can be conducted by written submission. *See Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.-Houston [1st Dist.] 1991, writ denied). However, even if an oral hearing occurs, oral testimony cannot be adduced. *See* Tex.R. Civ. P. 166a(c) ("No oral testimony shall be received at the [summary judgment] hearing."). We overrule issue two.

### C. Consent

In issue five, the Greens argue that the settlement is unenforceable because there was no consent at the time the judgment was rendered on the agreement. In support of their position, they rely on *S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855 (Tex.1995), *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288 (1951), and *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442 (Tex.1983).

A review of the authorities cited above makes it clear that the Greens confuse the

---

7. The Greens are appearing pro se on appeal, and we construe their appellate brief liberally. *See Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex.App.-Dallas 2007, no pet.). Nonetheless, a party proceeding pro se must still comply with all applicable procedural rules. *See id.* If that were not the case, pro se litigants would be afforded an unfair advantage over those represented by counsel. *See Cooper v. Circle Ten Council Boy Scouts of America*, 254 S.W.3d 689, 693 (Tex.App.-Dallas 2008, no pet.). Therefore, on appeal, the pro se litigant must properly present his case. *See Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex.App.-Dallas 2004, pet. denied).

requirements for an agreed or consent judgment with those for an enforceable settlement agreement. *See Leal,* 892 S.W.2d at 857 (noting agreed judgment rendered after one of the parties revokes his consent is void); *Burnaman,* 240 S.W.2d at 291 (concluding court cannot render valid consent judgment when consent of one of the parties is wanting); *Quintero,* 654 S.W.2d at 444 (noting party has right to revoke consent at any time before rendition of agreed judgment). The *Padilla* court stated

> Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.

*Padilla,* 907 S.W.2d at 461.

An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof. *Id.* at 462. Midland and Barrett Burke filed a counterclaim seeking enforcement of the parties' agreement, and they later moved for summary judgment on that claim. As discussed above, the summary judgment evidence established an enforceable settlement agreement as a matter of law.

The trial court did not err in granting Midland and Barrett Burke's motion for summary judgment and in enforcing the settlement agreement. We overrule issue five.[8]

## IV. Conclusion

Having overruled all of the Greens' issues, we affirm the trial court's judgment.

---

8. In a related sixth issue, the Greens appear to argue that they could not have made changes to the mutual release on May 11, 2009, as appellees claim, because there was a lack of consent by that time and, thus, there was no valid agreement to which they could make changes. As previously discussed, the Rule 11 agreement and e-mail exchange between Leyh and Weston dated April 3, 2009, established that the parties had entered into an enforceable settlement agreement. Further, the enforceability of the agreement was not contingent upon the language of the release—all of the material terms of the agreement and confirmation of the settlement were contained in the series of e-mails between Leyh and Weston and the Rule 11 agreement. Consequently, we overrule issue six.