**Affirmed and Memorandum Opinion filed December 19, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00897-CV
_____

**JAMES PATRICK PHILLIPS, Appellant**

**V.**

**STACEY LYNN PHILLIPS, Appellee**

**On Appeal from the 246th District Court
Harris County, Texas
Trial Court Cause No. 2011-20224**

## MEMORANDUM OPINION

James Patrick Phillips appeals from an Agreed Final Decree of Divorce and an order denying his motion for new trial. James contends that his attorney lacked authority to sign a Rule 11 agreement on his behalf while James was in federal prison. We affirm.

BACKGROUND

James and Stacey Lynn Phillips were married on May 15, 2003. During their marriage they had one son, J.M.R.

On December 17, 2009, James was sentenced to 135 months in prison followed by three years of supervised release. *See United States v. Brooks*, 681 F.3d 678, 689 (5th Cir. 2012). James and Stacey separated in May 2010. Stacey filed for divorce on April 1, 2011 and asked for a division of community property; confirmation of her separate property; sole managing conservatorship of J.M.R.; and child support. James filed a counterclaim seeking joint managing conservatorship; division of community property; and confirmation of his separate property.

During pretrial settlement discussions, James's conviction and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit. *See id.* at 684. Notwithstanding his incarceration in Alabama, James hired three different attorneys to represent him throughout the course of this litigation. The first attorney, Teresa Waldrop, was replaced by Thomas A. Martin after a temporary orders hearing and before trial.

The divorce was set for trial on May 21, 2012. On that date, Martin signed an agreement under Texas Rule of Civil Procedure 11 on James's behalf; this agreement resolved all issues in connection with the divorce. James was not present at trial or at the signing of the settlement agreement due to his incarceration. Martin signed James's name on the Rule 11 agreement "by permission." Stacey, her attorney, and Martin filed the Rule 11 agreement with the trial court. The trial court stated as follows on the record on May 21: "[T]he Court approves your agreement, and your Rule 11 Agreement, and your divorce is granted." The parties then agreed on the record that entry of judgment in conformity with the trial court's

pronouncement would be set for June 22, 2012. James's attorney Martin requested this date because "it takes at least 7 to 10 days for paper to get there to Montgomery, Alabama and then to come back." The trial court then stated: "Ma'am you are divorced, but we are waiting on the paperwork."

James filed for bankruptcy on June 21, 2012. James's attorney Martin filed a Notice of Respondent's Bankruptcy and Request for an Immediate Stay in the 246th District Court on the same day and sent a copy to Stacey's attorney. On June 22, 2012, Stacey's attorney appeared for a hearing on the signing and entry on the Agreed Final Decree of Divorce. The trial court signed the divorce decree on June 22, 2012 in conformity with the previously announced judgment "as a ministerial act based on rendition on May 21, 2012 per record."[1] Neither James nor his attorney Martin signed the Agreed Final Decree of Divorce.

James hired new counsel, Liza Greene, and filed an opposed motion to vacate judgment on July 6, 2012. James argued in the motion to vacate that the June 22, 2012 divorce decree had been signed in violation of the automatic bankruptcy stay. After a hearing on July 19, 2012, the trial court denied James's motion to vacate judgment.

James filed a motion for new trial on July 19, 2012. James asserted that he was entitled to a new trial based upon the following contentions: (1) attorney Martin

---

[1] The ministerial act of entry of a judgment on June 22 does not constitute the continuation of judicial proceedings within the meaning of the bankruptcy stay provision, 11 U.S.C. § 362(a)(1), because the trial court determined and announced its judgment on the record on May 21 — before James filed his bankruptcy petition. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527-28 (2d Cir. 1994); *see also Elliott v. Papatones (In re Papatones)*, 143 F.3d 623, 625 (1st Cir. 1998) (Section 362(a)(1) "does not stay acts that are 'essentially clerical in nature,' as for example 'when an official's duty is delineated by, say, a law or judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment . . . .'") (quoting *Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 974 (1st Cir. 1997)). This precept comports with Texas law recognizing the effectiveness of a divorce judgment announced orally in court. *See Dunn v. Dunn*, 439 S.W.2d 830, 832-33 (Tex. 1969).

3

signed the Rule 11 agreement without James's consent; (2) the trial court abused its discretion when dividing the marital estate; and (3) the trial court failed to grant his motion to vacate judgment.

At the August 29, 2012 hearing on James's motion for new trial, James did not testify in person, telephonically, or by deposition. James submitted no written communications to the trial court. Martin testified at the hearing pursuant to a subpoena.

Martin testified that he represented James and was present when the divorce was called to trial on May 21, 2012. Martin further testified that he communicated with James in prison through e-mail and mail, and that he believed he had negotiation and settlement authority on James's behalf. James's attorney Greene offered several documents into evidence in connection with James's contention that Martin signed the Rule 11 agreement without James's consent. The trial court excluded some of the documents, including Exhibits 1, 2, 6, and 7. The court excluded Exhibits 1, 2, and 7 based on Martin's assertion of the attorney-client privilege on James's behalf. Exhibit 6 was excluded on relevance grounds. After denying the motion for new trial, the trial court ordered that all of the exhibits be included in the record on appeal.

James timely filed his notice of appeal on September 24, 2012.

## STANDARD OF REVIEW

James's appeal focuses on the denial of his motion for new trial. We review the trial court's disposition of a motion for new trial for abuse of discretion. *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009); *see also In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 756-57 (Tex. 2013); *Miller v. Ferguson*, 05-98-01246-CV, 2001 WL 845764, *1 (Tex.

App.—Dallas July 27, 2001, no pet.) (not designated for publication). We also review a trial court's decision to admit or exclude evidence for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (citing *State v. Bristol Hotel Asset Co.,* 65 S.W.3d 638, 647 (Tex. 2001)).

A trial court abuses its discretion if it acts arbitrarily and without reference to guiding rules and principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Miller,* 2001 WL 845764, at *1; *see also Bradford v. Bradford*, 971 S.W.2d 595, 597 (Tex. App.—Dallas 1998, no pet.). In determining whether the trial court has abused its discretion, we review the record in the light most favorable to the trial court's action. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). We will indulge every legal presumption in favor of the trial court's decision. *Id*.

## ANALYSIS

James contends that the trial court abused its discretion in denying his motion for new trial because (1) attorney Martin lacked authority to enter a Rule 11 agreement on James's behalf and contrary to his wishes; and (2) the trial court erroneously excluded exhibits 1, 2, 6, and 7 from evidence at the new trial hearing.

## I. Rule 11 Agreement

James contends that the Rule 11 agreement was entered without his consent because attorney Martin lacked actual authority to act on James's behalf when Martin signed it.

An attorney may execute an enforceable Rule 11 agreement on his client's behalf. *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also In re R.B.*, 225 S.W.3d 798, 803 (Tex.

5

App.—Fort Worth 2007, no pet.).  An attorney's authority to do so flows from the agency relationship that exists between the attorney and the client; the attorney's acts and omissions within the scope of his employment are regarded as the client's acts.  *Green,* 342 S.W.3d at 691; *see also Breceda v. Whi,* 187 S.W.3d 148, 152 (Tex. App.—El Paso 2006, no pet.).

It is presumed that the attorney has actual authority conferred by the client to act on the client's behalf, and is acting in accordance with the client's wishes. *Breceda*, 187 S.W.3d at 152.  This presumption may be rebutted by affirmative proof that the client did not authorize his attorney to enter into a settlement, such as an affidavit from the client to that effect.  *See City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 629 (Tex. App.—Fort Worth 2003, pet. denied).  "Every reasonable presumption is to be indulged in favor of a settlement made by an attorney duly employed, and especially so after a court has recognized such an agreement and entered a solemn judgment on it."  *Williams v. Nolan*, 58 Tex. 708, 714 (1883); *see also Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied); *Cleere v. Blaylock*, 605 S.W.2d 294, 296 (Tex. Civ. App.—Dallas 1980, no writ).  James contends that evidence of three circumstances present in this case suffices to overcome the presumption: (1) "the inherent limitations on communication" between Martin and James while James was in prison; (2) the trial court's statement that, to its knowledge, Martin's last pretrial contact with James occurred "a few days before trial;" and (3) the settlement agreement signed by Martin and a proposed agreement filed earlier the same day contained "radically different terms."

6

We conclude that these circumstances do not overcome the presumption that attorney Martin acted with actual authority to sign the Rule 11 agreement on James's behalf.

With respect to limits on communication, the record here does not overcome the presumption of actual authority because (1) affirmative evidence offered at the hearing indicated that there was ample communication between attorney and client; and (2) no evidence was presented to suggest that attorney Martin and his client James were having difficulty in communicating due to James's incarceration. Martin testified at the new trial hearing that he and James communicated via physical mail and an e-mail program for federal prisoners.

The trial court's knowledge that Martin and James discussed the case "a few days before trial" does not indicate that the trial court should have questioned attorney Martin's authority. To the contrary, when taken in context, this knowledge demonstrates the court's reasonable belief that James's attorney had settlement authority:

> I will give you my recollection, that is, that Mr. Martin, first of all, requested a continuance of the trial because of a criminal trial in Galveston, which Mr. Martin was required to attend. And we postponed the trial based upon that. And the instruction, as I recall, from that Court, was Mr. Martin, when you concluded with that, you were on our trial docket.
>
> He came — Mr. Martin came back for the setting. And as I recall, he placed — I don't know, I was under the impression, he was in pretty good contact with his client, and had been with him as late as a few days before trial. And that's everything I know. Everything else is on the record.

7

This circumstance does not overcome the presumption. We likewise reject the suggestion that an attorney's settlement authority should be suspect whenever a final agreement differs from an earlier proposed agreement.

James contends that the trial court should have made "further inquiry" into Martin's actual authority. We disagree because there were no indicators to prompt further inquiry. Martin stated that "I represent James Patrick Phillips, the respondent." Along with this affirmation from Martin that he represented James came the presumption of actual authority.

On this record, James has not overcome the presumption that Martin acted with actual authority and in conformity with James's wishes when Martin signed the Rule 11 Agreement.

We overrule James's first issue.

## II. Excluded Evidence

In his second issue, James argues that the trial court abused its discretion when it excluded certain exhibits offered in support of his motion for new trial.

### A. Exhibits 1, 2, and 7

These are confidential communications between James and attorney Martin. Exhibit 1 is a letter dated May 11, 2012 from Martin to James regarding Stacey's settlement offer. Exhibit 2 contains e-mail correspondence between James and Martin regarding the settlement offer. Exhibit 7 is a letter from Martin dated May 22, 2012, informing James that an agreement had been reached, along with the terms of that agreement. James's new attorney Greene offered Exhibits 1, 2, and 7 at the new trial hearing in support of his request for a new trial. James's former attorney

8

Martin asserted the attorney-client privilege at the new trial hearing with respect to Exhibits 1, 2, and 7.

It is beyond dispute that Exhibits 1, 2, and 7 are privileged attorney-client communications. Exhibits 1 and 7 have the statement "Attorney-Client Privileged Matter" printed across the top. Like Exhibits 1 and 7, the emails between James and Martin contained in Exhibit 2 discuss legal strategy in connection with trial and settlement. The content and nature of the documents themselves establish that they are protected from disclosure by the attorney-client privilege. *See, e.g., Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986) (per curiam); *see also* Tex. R. Evid. 503(a)(5).

The attorney-client privilege belongs to the client. *West v. Solito*, 563 S.W.2d 240, 244 n.2 (Tex. 1978); *see also* Tex. R. Evid. 503(b)(1). The privilege does not terminate at the conclusion of the attorney's employment. *Bearden v. Boone*, 693 S.W.2d 25, 27-28 (Tex. App.—Amarillo 1985, no writ); *see also* Tex. R. Evid. 503(c) ("The person who was the lawyer . . . at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client."). The attorney owes a duty in appropriate circumstances to protect the confidentiality of attorney-client communications. *See generally* Tex. Disciplinary Rules Prof'l Conduct R. 1.05, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. (Vernon 2013). An attorney is presumed to have the authority to assert the privilege on the client's behalf. *See e.g., Cole v. Gabriel*, 822 S.W.2d 296 (Tex. App.—Fort Worth 1991, no writ).

The trial court's reasoning for refusing to admit Exhibits 1, 2, and 7 into evidence at the new trial hearing was that (1) Martin, as James's former attorney, owed a continuing duty to claim the privilege on James's behalf with respect to

confidential attorney-client communications between Martin and James; and (2) the court had no basis on the record before it to conclude that James had waived the privilege. The following colloquy occurred during the new trial hearing.

> MS. GREENE: Judge, is it my understanding, the Court is making a ruling, that any communications between Mr. Martin and Mr. Phillips, that Mr. Martin has a right to claim that privilege --
>
> THE COURT: I think he has a duty to claim it.
>
> MS. GREENE: -- even if the client is waiving the privilege?
>
> THE COURT: How do I know the client is waiving? He's not here.
>
> MS. GREENE: Judge, that's true. But I'm currently representing the client. I think . . . .
>
> THE COURT: Well, when a document is tendered into evidence from Mr. Martin to your client, his former client, and on the top of it, it says, Attorney/Client Privilege, and Mr. Martin claims the privilege, that's the reason for my ruling.

We agree that the record contains no basis for concluding that James expressly waived his attorney-client privilege with respect to communications between James and Martin.

James's new attorney Greene represented James at the hearing. She told the trial court that she had a signed retainer agreement with James, and that she had received an email from James instructing her to file a motion for new trial. Among other things, the motion for new trial asserts that James was not present during negotiations leading up to the settlement and did not consent to the Rule 11 agreement's terms; this pleading does not expressly represent that the attorney-client privilege is being waived as to communications between Martin and James. It does not reference Texas Rule of Evidence 503(d); nor does it assert that the

10

attorney-client privilege has been waived as to communications between James and Martin due to circumstances involving furtherance of crime or fraud; multiple claimants through the same deceased client; breach of Martin's duty to James; an attested document to which the lawyer is an attesting witness; or joint clients and a matter of common interest. No evidence was attached to the motion for new trial.

Greene tendered Exhibits 1, 2 and 7 during the new trial hearing. She did not argue or establish at the hearing that disclosure of attorney-client communications between Martin and James was permissible because the circumstances enumerated in Texas Disciplinary Rule of Professional Conduct 1.05(c) or Texas Rule of Evidence 503(d) were present. She did not alert the trial court to any asserted evidentiary basis for concluding that such circumstances were present.

On this record, the trial court acted within its discretion in concluding that no basis for waiver of the attorney-client privilege had been argued or established as to confidential communications between James and Martin. *See, e.g., In re USA Waste Mgmt. Resources, L.L.C.,* 387 S.W.3d 92, 98 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) ("The party seeking discovery of an otherwise privileged communication bears the burden of proving" exception under Rule 503(d)). James had sufficient opportunity to inform the trial court expressly that he wished to waive his privilege as to these communications but did not do so. The trial court's vigilance in addressing whether the privilege had been waived in the absence of evidence expressly establishing James's intent to waive was appropriate given the particular circumstances here, which focused on James's disavowal of actions by his prior lawyer in dealings with the court that occurred while James was not present. The attorney-client privilege must be carefully guarded — once the

11

privilege is waived, it is forever waived. *Mid-Century Ins. Co. of Tex. v. Lerner*, 901 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1995, no writ).

We hold that the trial court acted within its discretion when it excluded Exhibits 1, 2, and 7 from evidence at the new trial hearing.

### B.    Exhibit 6

This exhibit is an engagement letter between Martin and James dated December 23, 2011. At the new trial hearing, James's attorney Greene argued that "it's relevant to his authority to act on Mr. Phillips' behalf." The trial court sustained a relevance objection to this exhibit at the hearing. James contends on appeal that the trial court erred in so doing because "it is the sole document intended to establish and define the agency relationship at issue." He further contends that this letter "is the dispositive document in determining what actual authority, if any, Mr. Martin had under the terms of his employment by James."

The trial court acted within its discretion in excluding the engagement letter from evidence at the new trial hearing. The existence of an attorney-client relationship between James and Martin at the time of the settlement was not in dispute. The existence of that relationship carried with it a presumption that Martin had authority to settle on James's behalf. James identifies no aspect of the obligations imposed by the engagement letter that differ from those already existing under Texas Disciplinary Rule of Professional Conduct 1.02(a).

At no point during the new trial hearing or in his appellate brief has James explained how the engagement letter's contents make it more probable that the presumption of authority to settle can be overcome. *See* Tex. R. Evid 401. The engagement letter itself does not constitute "affirmative proof" that James did not

authorize Martin to enter into the Rule 11 agreement. *See City of Roanoke*, 111 S.W.3d at 629.

The trial court acted within its discretion in excluding Exhibit 6.

**C.     Motion for New Trial**

James contends that his motion for new trial was improperly denied due to the exclusion of certain exhibits. We have determined that the exhibits in question were not improperly excluded. We further conclude that the trial court acted within its discretion by denying James's motion for new trial based upon the record created in connection with the hearing on the motion for new trial.

A trial court has wide discretion in denying a motion for new trial, and an appellate court will not disturb its action on appeal absent a showing of an abuse of discretion. *See Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *see also Bradford*, 971 S.W.2d at 597 (citing *Evans*, 889 S.W.2d at 268). While it is an abuse of discretion to grant a new trial in the interest of justice if the record does not support it, it is not an abuse of discretion to deny a new trial if the record does not support the requested reason for the grant. *In re Toyota Motor Sales*, 407 S.W.3d at 758. Because the record does not support the articulated reasons, the trial court did not abuse its discretion by denying a new trial on those grounds. *See id.*

We hold that the trial court acted within its discretion in denying James's motion for new trial.

## CONCLUSION

We overrule James's issues on appeal and affirm the trial court's judgment.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Jamison, and Busby.