

# NUMBER 13-21-00312-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE FRED T. PHILIPS AND MERCEDES PHILIPS

## On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria[1]

On October 1, 2021, relators Fred T. Philips and Mercedes Philips filed a petition

for writ of mandamus seeking to compel the trial court to vacate its order enforcing a Rule

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *id.* R. 47.4 (explaining the differences between opinions and memorandum opinions).

11 agreement pertaining to the purchase of real property.[2] *See* Tex. R. Civ. P. 11. The Philips assert that the trial court abused its discretion (1) by granting the motion to enforce against them when they raised fact issues and revoked consent to the terms of the agreement, and (2) because the order granting the motion to enforce contains "material terms outside and beyond the Rule 11 agreement." We conditionally grant the petition for writ of mandamus.

## I.   BACKGROUND

On June 17, 2021, the real parties in interest Thomas D. Stikeleather and Lea Ann Stikeleather filed an original petition for declaratory judgment and breach of contract against the Philips. In their petition, the Stikeleathers alleged that they had entered into a "One to Four Family Residential Contract (Resale)" (contract), with the Philips in which the Stikeleathers agreed to buy the Philips' property located on Greenbriar Drive in Corpus Christi, Texas, (the property) for a purchase price of $690,000.00. The Stikeleathers alleged that the May 12, 2021 contract provided for a June 10, 2021 closing date.

Thereafter, on or about June 2, 2021, the Philips agreed to perform specified repairs to the property according to "Attachment A—Repairs and Treatments." The agreement to perform repairs states that "roofers will start in approx. 2 weeks from 6/2/21," and that "[a]ll work [is] to be done by licensed professionals and completed 7

---

[2] This original proceeding arises from trial court cause number 2021DCV-2279-E in the 148th District Court of Nueces County, Texas, and the respondent is the Honorable Carlos Valdez. *See id.* R. 52.2.

2

days prior to closing."

According to the Stikeleathers' petition, on June 10, 2021, the Philips informed the Stikeleathers that they would be unavailable for closing that day or the next day. On June 15, 2021, the Stikeleathers' counsel contacted the Philips's listing broker to facilitate a new date for closing on the property. The listing broker informed the Stikeleathers' real estate agent that they would not sell the property until the roof was repaired. On June 15, 2021, the Stikeleathers informed the Philips they were ready to close and asked to proceed with finalizing the sale. The Philips did not respond.

In their petition, the Stikeleathers stated that they had sold their residence in reliance on the contract and were accruing damages in the form of paying for alternative housing. They sought a declaratory judgment providing that the contract was valid and enforceable, specific performance, damages caused by the delay, and attorney's fees and costs.

According to the record, the Stikeleathers subsequently filed a motion for temporary restraining order seeking to prevent the Philips from selling the property to anyone else. This motion was originally set for hearing on July 8, 2021, but was reset twice by agreement.

On July 15, 2021, the Philips filed an original answer which consisted of a general denial. That same day, the parties entered into a Rule 11 agreement. The Rule 11 agreement, which was drafted by counsel for the Philips, states in relevant part:

1.     The hearing . . . on [the Stikeleathers'] Motion [for] Temporary Restraining Order, currently set for July 15, 2021, at 1:30 p.m., will be dropped and reset.

3

2. [The Philips] agree to refrain from re-listing, advertising, or attempting to market the home to another buyer.

3. [The Stikeleathers] shall be responsible for [facilitating] and scheduling the closing of the sale regarding the real property . . . for July 22, 2021.

4. Upon receipt of confirmation of the July 22, 2021 closing, [the Philips] agree to attend and close on the sale regarding the real property . . . .

5. Both parties agree to act in good faith and refrain from any behavior that would unreasonably delay the closing of the sale regarding the real property . . . for July 22, 2021.

6. If closing on the sale of the subject property is unavoidably delayed past July 22, 2021, through no fault of either party to this Rule 11 agreement, that unavoidable delay will not be considered a [breach] of this Rule 11 agreement.

7. The roof of the subject property is currently in the process of being repaired. If the completion of the repairs is unavoidably delayed past July 22, 2021, through no fault of either party to this Rule 11 agreement, that unavoidable delay will not be considered a breach of this Rule 11 agreement.

On July 22, 2021, the Philips filed counterclaims for breach of contract and a request for declaratory judgment. They denied that they had informed anyone that they would not be available for closing and instead alleged that the Stikeleathers failed to appear at closing and failed to deliver the loan documents. They sought a declaratory judgment that: "(a) [the Philips] are the non-defaulting party due to [the Stikeleathers'] failure to appear and failure to deliver loan documents at closing as provided in the Contract; (b) [the Philips] have the right to terminate the Contract and receive the earnest money as liquidated damages, thereby releasing both parties from the Contract."

4

On or about August 28, 2021, the Stikeleathers filed a motion to enforce the Rule 11 agreement. They asserted that the agreement met the requirements for enforcement, and thus the trial court "had a ministerial duty to enforce the terms of the agreement by ordering [the Philips] to deliver a signed General Warranty Deed to the property . . . in exchange for the sale price as set out in the [contract]." The Rule 11 agreement was attached as an exhibit to the motion. The motion contained argument and authority but was not supported by evidence. Based on the record provided, the Philips did not file a response to the Stikeleathers' motion to enforce.

On September 24, 2021, the trial court held a non-evidentiary hearing on the Stikeleathers' motion to enforce. Counsel for the Stikeleathers presented their motion and asked the trial court to enforce the agreement and require the Philips to proceed with closing on the house. The Stikeleathers' attorney asserted that they were not seeking a final judgment and that matters pertaining to damages would remain pending after enforcement.

In response, counsel for the Phillips represented they were available to close on the house "[a]lmost any time." As background, counsel asserted that "the problem came about" because the Philips could not complete roof repairs to the property within the time for the original closing date because they could not obtain workers due to the pandemic. Counsel stated that the roof repairs had been completed, but the Philips did not want to sell the house to the Stikeleathers while the Stikeleathers had a lawsuit pending against them for the damages incurred by the delayed closing. As stated by counsel, "we're not particularly interested in buying ourselves a lawsuit."

The Philips' attorney stated that "we have revoked our consent to the Rule 11 Agreement." According to the Philips' counsel, the Philips had discovered facts after the execution of the Rule 11 agreement that supported an argument that the Stikeleathers had breached the contract regarding the closing date. The court queried, "You're saying you entered into this Rule 11 Agreement and agreed to it, and then afterwards you found out some other things that made you want to revoke this Rule 11 Agreement?" Counsel for the Philips agreed:

> Yes, Your Honor. My contention is that . . . facts came to light that support our arguments that the buyers did not perform on the original date of closing, and . . . we were in negotiations with hopefully resolving the separate claims, the damages claims that they're now asserting against us for the costs that they have incurred for the home sale not having closed, [and] our contention is that they're responsible for those costs that they've incurred because they missed the original closing date.
>
> . . . .
>
> Dr. Philips came down to do the closing. It turns out the buyers had not gotten their financing in order, did not have their paperwork in order. He wasted a trip coming down from San Antonio to close the thing on the original date, and the buyers weren't ready to go.

Counsel thus asserted that the Philips wished to rescind the contract. Counsel argued that fact issues regarding whether the Stikeleathers breached the contract by failing to appear for the closing allowed them to rescind the contract and prevented enforcement of the Rule 11 agreement. Counsel further contended that, procedurally, a motion to enforce was inappropriate and that the Stikeleathers were required to bring a separate breach of contract claim to enforce the Rule 11 agreement. Counsel advised the court that the Philips wanted to proceed on the merits of the competing breach of contract

claims. The Philips' attorney clarified their readiness to close at the beginning of the hearing, compared to their desire to rescind the contract, by explaining "[i]f they're not going to be suing us, we'll close." "We're not willing to transfer the property then remain a target of a lawsuit." Counsel further referenced a dispute between the parties regarding the necessity of having the roof repairs completed prior to closing.

On September 28, 2021, the trial court signed an order granting the Stikeleathers' motion to enforce. The order reads, in relevant part:

> After considering the pleadings and arguments of counsel, the Court finds that said Motion to Enforce Rule 11 Agreement should be GRANTED.
>
> . . . .
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that [the Stikeleathers'] Motion to Enforce Rule 11 Agreement is GRANTED.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED [that the Philips] comply with the Rule 11 Agreement drafted and signed on July 15, 2021, . . . by closing on the sale of the property . . . at a closing scheduled for 4:00 p.m. September 30, 2021 at the office of the closing agent . . . .
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that [the Philips] appear at the closing and sign a Warranty Deed granting [the Stikeleathers], or any trust designated by them, the property . . . and signing any other necessary documents necessary to facilitate the closing and delivering said signed Warranty Deed to the closing agent, . . .in exchange for the sale price of Six Hundred and Ninety Thousand ($690,000.00) dollars, as set out in the [contract], previously signed by the parties regarding said property, said $690,000.00 delivered by [the Stikeleathers] to the closing agent at or before the closing.
>
> IT IS FINALLY ORDERED, ADJUDGED, AND DECREED all remaining claims and counterclaims in the above referenced cause should be mediated by a [mediator] chosen by the parties, or if the parties cannot agree on a mediator, by a mediator chosen by the Court, prior to trial on the merits.

That same day, the Philips filed a motion for reconsideration of the trial court's ruling. The summary of that motion states as follows:

> The only method available for enforcing a disputed Rule 11 agreement is through summary judgment or trial. To enforce a disputed Rule 11 agreement on motion without evidence and without procedural safeguards deprives defendants of their right to address appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. The Philips raised defenses and counterclaims in response to their claims. The parties disagree about the meaning of the language in the Rule 11 agreement and disagree about relevant facts. The Philips request the Court reconsider its previous ruling and allow this matter to be fully adjudicated to determine which party is entitled to the real estate.

Thereafter, on September 29, 2021, the Stikeleathers filed a first amended petition which included their previous allegations and further included a cause of action for breach of the Rule 11 agreement. This amended pleading seeks, inter alia, specific performance of the Rule 11 agreement. The Stikeleathers also filed a response to the Philips motion for reconsideration.

On October 1, 2021, the Philips filed this petition for writ of mandamus. The Philips raise two issues through which they assert that the trial court abused its discretion: (1) "by granting a motion to enforce a Rule 11 agreement against a party that raised fact issues and revoked consent to the terms of the Rule 11 agreement," and (2) because "its order granting the motion to enforce a Rule 11 agreement contains material terms outside and beyond the Rule 11 agreement." The Philips further filed a motion for temporary relief. This Court granted the motion for temporary relief and ordered the trial court's September 28, 2021 order and any enforcement action related to that order to be stayed pending resolution of this original proceeding.

8

This Court further requested and received a response to the petition for writ of mandamus from the Stikeleathers. In addition to addressing the Philips' claims on the merits, the Stikeleathers requested that we lift the stay that we previously imposed in this case and that we award them the attorney's fees and costs that they have incurred in responding to the petition for writ of mandamus. Given our disposition of this original proceeding, we dismiss the Stikeleathers' request to lift the stay as moot and deny their request for attorney's fees and costs.

## II. MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *See In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

"The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *see Walker*, 827 S.W.2d at 840. A trial court abuses its discretion when it acts with disregard for guiding rules or principles or when it acts in an arbitrary or unreasonable manner. *See In re Garza*, 544 S.W.3d at 840. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *See In re Acad., Ltd.*,

625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding); *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

### III.    RULE 11 AGREEMENTS

Texas Rule of Civil Procedure 11 provides that, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Agreements entered under Rule 11 "are contracts relating to litigation, and thus we construe them under the same rules as a contract." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam). "We do not give a Rule 11 agreement greater effect than the parties intended." *Id.* at 560–61. Further, if the agreement can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we construe it as a matter of law. *Id.* at 561 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

To be effective, a Rule 11 agreement must consist of "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)); *see Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 561. Nevertheless, the terms of a Rule 11 agreement do not need to be contained within a single document. *See Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 561; *Padilla*, 907 S.W.2d at 455; *Bandera Cnty. v.*

*Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App.—San Antonio 2013, no pet.); *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 692 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *See Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 560; *Tex. Tax Sols., LLC v. City of El Paso*, 593 S.W.3d 903, 912 (Tex. App.—El Paso 2019, no pet.).

A party reserves the right to revoke its consent to a Rule 11 agreement at any time before the rendition of judgment. *See Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *Garcia v. Harding*, 545 S.W.3d 8, 12 (Tex. App.—El Paso 2017, no pet.); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also In re J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, pet. denied) (mem. op.). "A withdrawal of consent must be effectively communicated to the trial court." *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see In re Caballero*, 441 S.W.3d 562, 573 (Tex. App.—El Paso 2014, orig. proceeding). The withdrawal of consent to a Rule 11 agreement must be supported by the record. *See Gonzalez v. Wells Fargo Bank, N.A.*, 441 S.W.3d 709, 714 (Tex. App.—El Paso 2014, no pet.).

Ordinarily, when one party withdraws consent to a Rule 11 agreement prior to any judgment in the case, another party can still seek to enforce it as a contract. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009); *Padilla*, 907 S.W.2d at 461; *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 334 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.). Nonetheless, when consent is withdrawn, the party seeking

11

enforcement of the agreement must pursue a separate claim for breach of contract. *See Ford Motor Co.*, 279 S.W.3d at 663; *Padilla*, 907 S.W.2d at 462. Like any other breach of contract claim, a claim for breach of a Rule 11 agreement "is subject to the established procedures of pleading and proof." *Ford Motor Co.*, 279 S.W.3d at 663 (citing *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (per curiam)); *see Cadle Co. v. Castle*, 913 S.W.2d 627, 630–31 (Tex. App.—Dallas 1995, writ denied) (stating that "the pleading must contain a short statement of the cause of action sufficient to give fair notice of the claims involved, including an allegation of a contractual relationship between the parties and the substance of the contract which supports the pleader's right to recover"); *see also Fairhart v. Turner*, No. 13-19-00620-CV, 2021 WL 2149633, at *3 (Tex. App.—Corpus Christi–Edinburg May 27, 2021, no pet.) (mem. op.).

## IV.    ANALYSIS

In two issues, the Philips contend that the trial court abused its discretion (1) by granting the Stikeleathers' motion to enforce the Rule 11 agreement because the Philips raised fact issues and revoked consent to the terms of the Rule 11 agreement, and (2) because its order granting the motion to enforce contains material terms "outside and beyond" the Rule 11 agreement.

## A.    Revocation of Consent

We begin our analysis with the Philips' contention that the trial court erred because the Philips had raised fact issues and revoked their consent to the Rule 11 agreement before the trial court granted the Stikeleathers' motion to enforce. In connection with their first issue, the Philips argue:

If fact issues are raised or a party has withdrawn consent 'the only method available for enforcing a [Rule 11] agreement is through summary judgment or trial.' The non-breaching party should raise its claim to enforce a disputed agreement 'through an amended pleading or counterclaim asserting breach of contract.'

Here, the [Phillips] raised fact issues and also withdrew their consent.

. . . .

Enforcing a disputed Rule 11 agreement simply on motion and without evidence deprives the [Philips] of the right to respond to appropriate pleadings, assert defenses, conduct discovery, cross-examine witnesses, and put on evidence[.]

(Internal citations omitted).

In response, the Stikeleathers assert, inter alia, that revocation of a Rule 11 agreement does not prevent enforcement of that agreement. They assert that *Staley*, relied upon by the Philips, and similar cases, are not germane because they address situations involving settlement agreements and final judgments, and this case concerns neither. *See Staley v. Herblin*, 188 S.W.3d 334, 335–37 (Tex. App.—Dallas 2006, pet. denied). They argue that the Texas Supreme Court approved the enforcement of a pretrial agreement under Rule 11 without the necessity of summary judgment or trial in *Shamrock Psychiatric Clinic, P.A. See* 540 S.W.3d at 561–62.

We agree with the Philips that they effectively revoked consent to the Rule 11 agreement but disagree with their assertion that the resulting conflict could only be resolved through summary judgment or trial. A motion to enforce may be a sufficient pleading to raise a breach of contract claim, and under certain circumstances, a motion to enforce may be treated as a dispositive motion to determine whether the agreement

13

should still be enforced after consent was revoked. *See Ford Motor Co.*, 279 S.W.3d at 663; *Am. Fisheries, Inc. v. Nat'l Honey, Inc.*, 585 S.W.3d 491, 502–503 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Neasbitt v. Warren*, 105 S.W.3d 113, 117 (Tex. App.—Fort Worth 2003, no pet.).

Here, the Stikeleathers' motion to enforce simply sought enforcement of the Rule 11 agreement as a ministerial duty. The motion to enforce did not assert that the Philips had breached the Rule 11 agreement or otherwise assert a cause of action for breach of contract. Although the Philips did not revoke consent to the Rule 11 agreement until the hearing on the motion to enforce, the Philips' revocation of consent was clearly communicated to the trial court and is apparent in the record. *See In re Caballero*, 441 S.W.3d at 573; *Baylor Coll. of Med*, 247 S.W.3d at 346. After the hearing, the Stikeleathers filed their amended petition raising for the first time, a claim for breach of the Rule 11 agreement and request for specific enforcement of that agreement. The Stikeleathers' motion to enforce did not give the Philips notice of any claim for breach of contract, and the claim for breach of the Rule 11 agreement was not before the trial court at the time of its hearing. Further, even if we could construe the motion to enforce as a separate claim for breach of contract, the motion to enforce was not supported by proof. *See Ford Motor Co.*, 279 S.W.3d at 663; *Cadle Co.*, 913 S.W.2d at 630–31.

The Stikeleathers urge that cases regarding the necessity of pleading and proving a breach of contract action are inapplicable because such cases involve settlement agreements and final judgments, and this case involves neither. However, the Stikeleathers cite no cases in support of this alleged distinction and offer no rationale for

14

such a disparate approach. While there may be some differences occasioned by the substances of the agreements and the effects thereof, we see no reason to apply a different approach to the case at hand. *See*, *e.g.*, *In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014) (orig. proceeding) (per curiam) (discussing when a Rule 11 agreement constitutes an agreed judgment); *In re Caballero*, 441 S.W.3d at 573 (applying rules pertaining to breach "where the partial summary judgment granted by the trial court is contrary to the Rule 11 agreement").

Based on the foregoing, we conclude that the trial court erred in granting the Stikeleathers' motion to enforce.

## B. Remedy by Appeal

To be entitled to mandamus relief, the Philips must show that they lack an adequate remedy by appeal. *See In re USAA Gen. Indem. Co.*, 624 S.W.3d at 787; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker*, 827 S.W.2d at 839–40. The Philips assert that:

> If the trial court's order stands, the [Philips] have no remedy because the order forces the [Philips] to transfer title to their home to the [Stikeleathers], under terms not agreed to in the Rule 11 Agreement. If the [Philips] win on their remaining counter claims, it may prove impossible to "unwind" the transaction because of third-party complications such as lender liens, potential mechanics and materialman's liens, title insurance issues, and tax issues.

The Stikeleathers do not address this aspect of mandamus relief in their response to the petition for writ of mandamus.

Balancing the benefits and detriments of mandamus review under the specific circumstances of this case, we conclude that the Philips lack an adequate remedy by

appeal to address the trial court's error. *See In re Acad., Ltd.*, 625 S.W.3d at 25. The order granting the Stikeleathers' motion to enforce essentially determines the main issue in the underlying lawsuit—that is, the ownership of the property, and does not provide the Philips with an opportunity to defend the claims against them. Allowing a case to proceed to trial under these circumstances "would skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of [the Philips'] defense in ways unlikely to be apparent in the appellate record." *In re CVR Energy, Inc.*, 500 S.W.3d 67, 81–82 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding [mand. denied]) (cleaned up) (discussing and collecting authorities weighing the benefits against the detriments of mandamus review). In short, the order places the Philips in danger of losing substantive rights. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker*, 827 S.W.2d at 839–40. We thus conclude that the Philips lack an adequate remedy by appeal.

## C.  Conclusion

We sustain the Philips' first issue regarding their revocation of consent to the motion for enforcement of the Rule 11 agreement. Having sustained this issue, we need not address the remaining arguments that they have made in support of their first issue or their second issue. *See* TEX. R. APP. P. 47.4.

### V.  CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the Stikeleathers' response, and the applicable law, is of the opinion that the Philips have met their burden to obtain mandamus relief. Accordingly, we lift the stay that we previously

16

imposed in this case. *See id.* R. 52.10. We conditionally grant the petition for writ of mandamus and direct the trial court to withdraw its order of September 28, 2021, and to conduct further proceedings in accordance with this opinion. Our writ will issue only if the trial court fails to comply. In so ruling, we emphasize that our ruling addresses the procedures utilized to determine the issues raised below, and we express no opinion regarding the substantive merit of those arguments or issues.

NORA L. LONGORIA
Justice

Delivered and filed on the
7th day of February, 2022.