

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00354-CV

Luz **CHAVEZ**, Individually, as Representative of the Estates of Rudolph Chavez Sr., Deceased, and Rudolph Chavez Jr., Deceased, and as Next Friend of Joel Chavez, a Minor; Darlene Chavez; Allen Chavez; Francisco Chavez; and Celia Chavez,
Appellants

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY** and Jose Juarez,
Appellees

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2007-CVE-000347-D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: June 17, 2015

AFFIRMED

This is an appeal from a trial court's order granting summary judgment in favor of appellees Kansas City Southern Railway Company and Jose Juarez (collectively "KC Southern"), enforcing a settlement agreement. In four issues on appeal, appellants Luz Chavez, Individually, as Representative of the Estates of Rudolph Chavez Sr., Deceased, and Rudolph Chavez Jr., Deceased, and as Next Friend of Joel Chavez, a Minor; Darlene Chavez; Allen Chavez; Francisco Chavez; and Celia Chavez (collectively "Chavez") contend the trial court erred in granting

summary judgment because KC Southern did not establish its right to judgment as a matter of law.

We affirm the trial court's judgment.

## BACKGROUND

This case involves the enforcement of a settlement agreement, arising out of a wrongful death lawsuit, which was filed as a result of a vehicle-train collision at a railroad crossing. This court previously considered an appeal arising from these same proceedings, and the following facts, which are pertinent to this opinion, have been drawn from our previous opinion. *See Chavez v. Kansas City S. Ry. Co.*, No. 04-11-00697-CV, 2013 WL 520100 (Tex. App.—San Antonio Feb. 13, 2013, pet. denied) (mem. op.).

> Chavez's husband and son died when a motor vehicle and a train collided at a railroad crossing in Aguilares, Texas. Chavez's husband, Rudolph Chavez Sr., was the driver of the vehicle, and her adult son, Rudolph Chavez Jr., was a passenger in the vehicle. The train was owned by Kansas City Southern Railway Company. Jose Juarez was the engineer driving the train at the time of the accident.

> Chavez and other family members, hereinafter referred to as "the plaintiffs," filed a wrongful death action against Kansas City Southern Railway Company and Juarez, hereinafter referred to as "the defendants." Chavez filed the action in her individual capacity, as next friend of Rudolph Chavez Sr.'s minor son, Joel, and as the representative of the estates of Rudolph Chavez Sr. and Rudolph Chavez Jr. Rudolph Chavez Sr.'s mother and father and his two adult children, Darlene and Allen, were also plaintiffs in the action. All of the plaintiffs were represented by multiple attorneys affiliated with the same law firm, Rosenthal & Watson, P.C.

> The case was tried to a jury. The jury returned a verdict in favor of the defendants, and the trial court signed a judgment in accordance with the verdict. The judgment was set aside, however, when the trial court granted the plaintiffs' motion for new trial.

> Thereafter, the plaintiffs' counsel and the defendants' counsel entered into negotiations and reached a settlement agreement. The settlement agreement was set out in emails as well as in an October 5, 2010, letter from the plaintiffs' counsel to the defendants' counsel. The trial court appointed a guardian ad litem for Joel, who was a minor, and set a hearing to approve the settlement agreement on behalf

of the child. At the hearing, which occurred on April 7, 2011, Chavez appeared and stated:

> At this time, I wish not to go forward. I would like you to grant me at least three months to find me another law firm. And I wish for them to be able to get all the documents that we need with the new lawyers that I'm—I want to get within the three months. I would like you to grant me that. I no longer want to continue with Rosenthal & Watson. I do not feel comfortable with them at all.

In response to Chavez's request, the trial court reset the hearing for May 31, 2011. Nothing was filed indicating that the attorney-client relationship between Chavez and Rosenthal & Watson had been dissolved.

On April 27, 2011, the defendants filed a motion to enforce the settlement agreement. The motion states that in September and October 2010 the plaintiffs' and the defendants' counsel negotiated a settlement agreement, the essential terms of which were set forth in emails and an October 5, 2010, letter written by plaintiffs' counsel to defendants' counsel. The trial court set the motion to enforce the settlement for hearing on May 31, 2011. The defendants' counsel served the motion to enforce the settlement agreement on plaintiffs' counsel, who remained Chavez's counsel of record.

The trial court held a hearing on May 31, 2011. Chavez failed to appear at this hearing. Plaintiffs' counsel and defendants' counsel appeared at this hearing. Defendants' counsel urged the trial court to enforce the settlement agreement. Plaintiffs' counsel confirmed that they had entered into a written settlement agreement with the defendants in October 2010, and that they had done so with Chavez's consent. At the conclusion of the hearing, the trial court stated it was granting the defendants' motion to enforce the settlement agreement. Subsequently, however, and apparently in response to correspondence from Chavez, the trial court set the motion to enforce the settlement agreement for rehearing on June 23, 2011. The trial court clerk notified Chavez and all counsel of record of the June 23, 2011, hearing.

Chavez failed to appear at the June 23, 2011, hearing. Plaintiffs' counsel and defendants' counsel appeared at the hearing. At the hearing, the trial court stated,

> [T]his hearing was set for the benefit of Ms. Chavez so that, you know, if she was going to hire a new firm or if she wanted to make

> any additional statements to the Court or present any additional arguments to the Court, this was her opportunity for that. And so, at this time, the Court is going to sign off on the order granting the motion to enforce settlement agreement, and it will be pronounced and rendered today, June 23, 2011.

> At the conclusion of the hearing, the trial court signed the defendants' motion to enforce the settlement agreement, and rendered a final judgment that the plaintiffs recover $531,000.00 from Kansas City Southern Railway Company.

> Thereafter, Chavez filed a pro se motion for new trial, which was overruled by operation of law. Chavez then filed a pro se notice of appeal.

*Id.* at *1–*2. In that opinion, this court reversed the trial court's judgment, holding the trial court erred in rendering judgment on the settlement agreement because the settlement agreement, set out in the October 5, 2010 letter from plaintiffs' counsel to the defendants' counsel, was not filed of record. *Id.* at *3. As a result, the requirements of Rule 11 were not satisfied.[1] *Id.* The case was remanded to the trial court for further proceedings. *Id*.

After remand, KC Southern filed the settlement agreement and then sought to enforce it, filing a breach of contract counterclaim alleging Chavez breached the settlement agreement by refusing to release her claims against KC Southern. A copy of the October 5, 2010 letter was attached to the counterclaim as an exhibit. The letter was signed by one of Chavez's trial attorneys, J. Christopher Dean, and it set out the terms of the settlement. KC Southern then moved for summary judgment on its counterclaim, seeking to enforce the settlement agreement. In its motion, KC Southern asserted the trial court previously approved the settlement agreement of the minor's claims as a matter of law, and the settlement agreement is enforceable as a matter of law. The following documents were attached to the motion: (1) a certified copy of the Webb County Civil

---

[1] "Rule 11 states that 'no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.'" *Chavez*, 2013 WL 520100, at *2 (quoting TEX. R. CIV. P. 11).

Case Docket sheet, (2) an affidavit with several attachments by Merritt Clements, an attorney for KC Southern, and (3) this court's February 13, 2013 memorandum opinion.

According to the Webb County Civil Case Docket sheet, which reflected the history of the case (including Chavez's first appeal to this court) from March 2, 2007 to October 28, 2013, several attorneys, including Mark G. Rosenthal, Mark Alvarado, Lynn Watson, and J. Christopher Dean, appeared on behalf of Chavez. In his affidavit, Mr. Clements testified he had engaged in negotiations with Chavez's attorney, and on October 5, 2010, Chavez's lead trial attorney, Mr. Dean, sent him a letter accurately reflecting the terms of the settlement he had negotiated with Mr. Dean. Attached to Mr. Clements's affidavit was a copy of the October 5, 2010 letter, copies of the transcripts from the April 7, 2011 and May 31, 2011 hearings on the motion to enforce the settlement and the June 23, 2011 hearing, and a file-stamped copy of KC Southern's counterclaim, which included a copy of the file-stamped October 5, 2010 letter.

Chavez filed a response, contending summary judgment was inappropriate because: (1) KC Southern failed to prove entitlement to judgment as a matter of law; (2) her summary judgment evidence raises a fact issue as to whether Rosenthal & Watson, P.C. had authority to bind her to the settlement agreement; and (3) she produced summary judgment evidence raising a fact issue as to certain elements of a valid contract. Chavez also sought summary judgment, alleging she was entitled to judgment based on certain affirmative defenses, each element of which she claims she established as a matter of law. Attachments to Chavez's summary judgment response included only the affidavits of Luz Chavez, Darlene Chavez, and Allen Chavez, each of whom testified they did not agree to settle the lawsuit against KC Southern.

In her affidavit, Luz Chavez testified about a number of events that occurred during 2010 and 2011, prior to her first appeal to this court. Luz testified that during the summer of 2010, she was pressured by Rosenthal & Watson, P.C. to accept the settlement agreement. She further states

that at the April 7, 2011 hearing, she informed the trial court she had released the firm[2] and asked the trial court to allow her more time to find a new law firm. Luz further stated that the trial court set a status hearing for May 31, 2011, to determine her progress in finding new representation. According to Luz, prior to the May hearing, KC Southern filed a motion to enforce the settlement agreement, which was granted during the May 31, 2011 hearing. Luz testified she did not attend the May hearing and had instead filed a motion for continuance.

With regard to the formation of the settlement agreement, Luz testified she told Mr. Rosenthal at a meeting in the summer of 2010 that she did not want to settle the case, but Mr. Rosenthal told her she had no choice because going to trial would be more expensive. According to Luz, Mr. Rosenthal yelled at her, harassed her, and even sent someone to wait outside her house with the settlement papers for her to sign.

Unlike Luz's affidavit, the affidavits of Darlene Chavez and Allen Chavez do not include the details of the harassment allegations. Rather, in each of their affidavits, Darlene Chavez and Allen Chavez simply testified they hired Rosenthal & Watson, P.C. to represent them, but they did not agree to settle the lawsuit or give the law firm consent to settle the lawsuit.

On February 6, 2014, after considering the motions, responses, and evidence, the trial court granted KC Southern's motion for summary judgment and rendered a final judgment based on the terms of the parties' settlement agreement. The trial court did not state the basis for its judgment. Six days later, the trial court rendered an amended judgment, correcting a mathematical error in the original judgment. Chavez filed a motion for new trial, but the motion was overruled by operation of law. This appeal followed.

---

[2] The affidavit does not indicate exactly when she released Rosenthal & Watson, P.C. However, it is clear by her statements that she had released them by the April 7, 2011 hearing.

#### ANALYSIS

Chavez raises four issues on appeal. In her first two issues, she argues the trial court erred in granting KC Southern's motion for summary judgment because KC Southern did not establish the existence of a valid settlement agreement as a matter of law and fact issues exist regarding the settlement agreement's enforceability. Chavez also contends the trial court erred in granting summary judgment for KC Southern because the appointed guardian ad litem's failure to provide "record testimony" recommending the settlement agreement on behalf of the minor child precludes enforcement of the settlement agreement. Finally, Chavez claims summary judgment in favor of KC Southern was improper because she established the elements of her affirmative defenses as a matter of law.

### *Standard of Review*

The standard of review in a traditional summary judgment case is well established. We review a trial court's grant or denial of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on this type of summary judgment motion, the moving party bears the initial burden of showing there is no genuine issue of material fact, and therefore, he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). A plaintiff moving for summary judgment must prove he is entitled to summary judgment as a matter of law on each element of his cause of action. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam); *Hodges v. SAFECO Lloyds Ins. Co.*, 438 S.W.3d 698, 700 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

A nonmovant has no burden to respond to a motion for summary judgment unless the movant establishes its right to judgment as a matter of law. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Grace v. Titanium Electrode Prods., Inc.*, 227 S.W.3d

293, 297 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Thus, because a summary judgment motion must stand on its own merits, the nonmovant may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law. *Grace*, 227 S.W.3d at 297 (citing *Willrich*, 28 S.W.3d at 23; *Rizkallah v. Conner*, 952 S.W.2d 580, 582 (Tex. App.—Houston [1st Dist.] 1997, no pet.)). However, once the movant establishes a right to summary judgment as a matter of law, the burden shifts to the nonmovant to present some evidence raising a genuine issue of material fact to avoid judgment in favor of the movant. TEX. R. CIV. P. 166a(c); *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet).

When reviewing a traditional summary judgment, we must take all evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor as well as resolve all doubts in favor of the nonmovant. *Valence*, 164 S.W.3d at 661; *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). If the summary judgment does not specify the grounds upon which it is based, we affirm the judgment if any of the grounds presented in the summary judgment motion are meritorious. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

With regard to summary judgment and affirmative defenses, a moving plaintiff is not under any obligation to negate a defendant's affirmative defenses. *Woodside v. Woodside*, 154 S.W.3d 688, 691–92 (Tex. App.—El Paso 2004, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). An affirmative defense prevents the granting of summary judgment only if each element of the affirmative defense is supported by summary judgment evidence. *Woodside*, 154 S.W.3d at 691–92 (citing *Kirby Exploration Co. v. Mitchell Energy Corp.*, 701 S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)). A party who raises an affirmative defense in an attempt to defeat a motion for summary judgment must either (1) present a disputed fact issue on the opposing party's failure

to satisfy his own burden of proof, or (2) establish at least the existence of a fact issue on each element of his affirmative defense by summary judgment evidence. *Tesoro Petroleum Corp.*, 106 S.W.3d at 124.

*Application*

As stated above, in her first two issues on appeal, Chavez challenges the trial court's summary judgment in favor of KC Southern, contending KC Southern did not establish the existence of a valid settlement agreement as a matter of law, and fact issues exist regarding the settlement agreement's enforceability. Specifically, she contends the settlement agreement is not enforceable because: (1) she was not a party to the agreement because her attorneys had no authority to bind her; (2) certain elements of a valid contract – in particular, consent, a meeting of the minds and certain essential terms – do not exist; and (3) the settlement was not properly approved by the guardian ad litem for the minor child.

*Authority to Bind Chavez*

Because KC Southern is a plaintiff moving for summary judgment, it must prove it is entitled to summary judgment as a matter of law. *MMP, Ltd.*, 710 S.W.2d at 60; *Hodges*, 438 S.W.3d at 700. To begin, a court may enforce a written settlement agreement even if one of the parties to the agreement withdraws its consent before judgment is rendered on the agreement. *Mantas v. Fifth Ct. of App.*, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (per curiam); *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995); *Saenz v. Martinez*, No. 04-07-00339-CV, 2008 WL 4809217, at *3 (Tex. App.—San Antonio Nov. 5, 2008, no pet.) (mem. op.). A party seeking to enforce a disputed settlement agreement must pursue a separate breach of contract claim, which is subject to the normal rules of pleading and proof. *Padilla*, 907 S.W.2d at 461; *Saenz*, 2008 WL 4809217, at *3; *Gamboa v. Gamboa*, 383 S.W.3d 263, 269 (Tex. App.—San Antonio 2012, no pet.). "This mode of enforcement is based on rule 11 of the Texas Rules of Civil

Procedure, the requisites of which are necessary for entry of any judgment enforcing a settlement agreement." *Saenz*, 2008 WL 4809217, at \*3 (citing *Padilla*, 907 S.W.3d at 460). Under Texas Rule of Civil Procedure 11, "no agreement between the attorneys or parties touching any suit pending will be enforced unless it is in writing, signed, and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Accordingly, to be enforceable, a settlement agreement must comply with Rule 11. *See Padilla*, 907 S.W.2d at 460.

Here, the summary judgment evidence contains a copy of the filed October 5, 2010 letter, establishing the existence of a settlement agreement that complies with Rule 11. The letter (1) was in writing; (2) was signed by Chavez's trial counsel, J. Christopher Dean; (3) set out the relevant terms of the settlement; and (4) was filed of record. *See* TEX. R. CIV. P. 11; *Padilla*, 907 S.W.2d at 460. Although Chavez did not sign the Rule 11 agreement, her attorney signed it on her behalf. It is this element of the Rule 11 settlement agreement that Chavez first challenges by claiming she is not a party to the agreement because her attorneys had no authority to bind her.

It is a well-established principal of contract law that a person must be a party to the agreement in order to be bound by that agreement. *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.). However, "[t]he attorney-client relationship is an agency relationship; the attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts." *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 690 (Tex. App. Houston [14th Dist.] 2011, no pet.). An attorney may act on his client's behalf and execute an enforceable Rule 11 agreement. *Id*. Furthermore, "[a]n attorney retained for litigation is presumed to possess actual authority to enter into a settlement agreement on behalf of a client." *Whitmire v. Nat'l Cutting Horse Assoc.*, No. 02-11-00170-CV, 2012 WL 4815413, at \*5 (Tex. App.—Fort Worth Oct. 11, 2012, no pet.) (mem. op.) (citing *City of Roanoke v. Town of Westlake*, 111 S.W.3d

617, 629 (Tex. App.—Fort Worth 2003, pet. denied)). A party can rebut this presumption of actual authority by affirmative proof that a client did not authorize his attorney to enter into a settlement agreement. *Whitmire*, 2012 WL 4815413, at \*5. Nevertheless, we will indulge every reasonable presumption to support a settlement agreement made by an attorney hired by a client. *Ebner v. First Bank of Smithville*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied).

With regard to Mr. Dean's authority to act on behalf of Chavez, KC Southern presented summary judgment evidence establishing Mr. Dean was hired to represent Chavez as a litigation attorney, and therefore had the authority to bind her to the agreement. The summary judgment evidence produced by KC Southern, i.e., the Webb County Civil Case Docket sheet, establishes Mr. Dean announced "present" for Chavez each time the case was called for trial in 2009 and 2010. Other attorneys, including Mark G. Rosenthal, Mark Alvarado, and Lynn Watson of Rosenthal & Watson, P.C., also announced present for Chavez on those same days. However, this does not exclude Mr. Dean as Chavez's legal representative during the litigation, nor does it diminish his presumed authority as her attorney to enter into the settlement agreement on her behalf. KC Southern's summary judgment evidence also includes the October 5, 2010 letter, which was printed on letterhead from the Dean Law Firm and signed by Mr. Dean. Based on this summary judgment evidence, we hold KC Southern established as a matter of law that Mr. Dean was one of Chavez's attorneys. His ongoing appearances during trial establish he represented Chavez in the litigation against KC Southern.[3] Moreover, KC Southern's attorney, Mr. Clements, identified Mr. Dean as Chavez's lead trial attorney. Accordingly, we hold KC Southern proved as a matter of law that Mr. Dean possessed actual authority to bind Chavez to the settlement agreement, and

---

[3] The summary judgment evidence shows a Notice of Appearance was filed the day before Mr. Dean began announcing "present" on behalf of Chavez. However, the docket sheet does not indicate who filed the notice.

therefore, as a matter of law Chavez was a party to the agreement. *See Whitmire*, 2012 WL 4815413, at \*5; *Green*, 342 S.W.3d at 690.

In addition to producing evidence establishing Mr. Dean's actual authority as a matter of law, KC Southern also produced evidence regarding the guardian ad litem's approval of the settlement agreement on behalf of the minor plaintiff. KC Southern attached a copy of order appointing Adriana Maddox as the guardian ad litem for the minor as well as copies of the May 31, 2011 and June 23, 2011 hearings, at which recommendations to the court to approve the settlement on behalf of the minor plaintiff were made. *See* TEX. R. CIV. P. 173.4(c) (stating that guardian ad litem has duty to determine and advise court whether settlement is in minor's best interest). At the May 31, 2011 hearing, Ms. Maddox's husband and law partner, Edward Maddox, appeared and was orally appointed as co-ad litem in the case. Following his appointment, he recommended the trial court accept the settlement offer. Moreover, at the June 23, 2011 hearing, Mrs. Maddox appeared, confirming Mr. Maddox's approval of the settlement agreement. Based on the foregoing, we hold KC Southern presented evidence establishing as a matter of law that a settlement agreement, to which Chavez was a party, was executed in compliance with Rule 11, establishing KC Southern's right to enforce the settlement agreement as a matter of law.

Because KC Southern proved it is entitled to judgment as a matter of law, the burden shifted to Chavez to present some evidence raising a fact issue as to the unenforceability of the agreement. *See* TEX. R. CIV. P. 166a(c); *Romo*, 48 S.W.3d at 269. Chavez contends she presented summary judgment evidence to raise a fact issue as to her attorneys' authority to bind her to the settlement agreement. In her brief she states: "[F]ormer trial counsel had no authority to be negotiating or entering into any purported agreement to dismiss [Chavez's] claims because [Chavez] clearly expressed [her] intention to sever all ties with the law firm before the date on which the so-called settlement agreement was formed."

In support, Chavez points to her own affidavit, wherein she testifies she hired Rosenthal & Watson, P.C. to represent her, and neither she nor the other plaintiffs agreed to settle the case. Luz specifically states that as early as the summer of 2010, she told Rosenthal & Watson, P.C. she did not agree to settle the case, a fact to which she also swore at an April 7, 2011 hearing on the motion to enforce the settlement agreement. Although this is some evidence Chavez told *Rosenthal & Watson, P.C.* and its attorneys they had no authority to settle on her behalf, Chavez did not produce a scintilla of evidence to establish that at the time the settlement agreement was entered, she had revoked Mr. Dean's authority to settle the case on her behalf. Chavez produced no evidence to establish Mr. Dean of the *Dean Law Firm* acted without authorization when he signed the October 5, 2010 letter, i.e., the settlement agreement. The summary judgment affidavits set forth how, as early as the summer of 2010, Chavez revoked the authority of Rosenthal and Watson, P.C. to enter into a settlement agreement, and how Luz was upset with Mr. Rosenthal's and Ms. Watson's actions with regard to the settlement. However, none of the summary judgment affidavits produced by Chavez mention or refer to Mr. Dean or his representation and authority in any way.

In her brief, Chavez argues "attorney Dean was working as an agent for Rosenthal & Watson, P.C. as evidenced by the 'cc' notation [to Lynn Watson] at the bottom of the [settlement agreement]," and therefore, he too lacked authority to act on her behalf. According to Chavez, by revoking Rosenthal & Watson, P.C.'s authority, Mr. Dean's authority was likewise revoked because Rosenthal & Watson, P.C. was his "principal." The settlement letter contains a "cc" notation to Lynn Watson; however, we hold this alone is not evidence of an agency relationship between Rosenthal & Watson, P.C. and Mr. Dean. Chavez presents no authority to support her claim that a "cc" notation to Lynn Watson creates an agency relationship. Furthermore, she produced no summary judgment evidence to establish an agency relationship between Mr. Dean and Rosenthal & Watson, P.C. In her reply brief, Chavez points to motions filed in 2011, where

Mr. Dean's name is listed under the Rosenthal & Watson, P.C. signature block; however, these motions are not part of Chavez's summary judgment evidence.

Moreover, even assuming Mr. Dean was acting under an agency relationship with a firm other than his own, no evidence exists showing KC Southern had notice of any limitations on Mr. Dean's authority or power to settle the dispute. *See Whitmire*, 2012 WL 4815413, *5 (highlighting that opposing counsel had no notice of any limitations on attorney's authority to settle in context of apparent authority). The earliest notice KC Southern's counsel may have had regarding any limitation on Mr. Dean's authority to settle the dispute would have been at the April 7, 2011 hearing when Luz informed the court she had released Rosenthal & Watson, P.C. This is well after the settlement agreement was signed on October 5, 2010. Accordingly, after taking all evidence favorable to the nonmovant as true and indulging all reasonable inferences in the nonmovant's favor as well as resolving all doubts in favor of the nonmovant, we hold Chavez did not produce any summary judgment evidence raising a fact issue that Mr. Dean lacked authority to bind her to the settlement agreement. *See Valence*, 164 S.W.3d at 661; *Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

*Essential Elements of Contract*

In addition to challenging Mr. Dean's authority to bind her to the settlement agreement, Chavez also asserts her summary judgment evidence shows an absence of consent, a lack of the meeting of the minds, and a lack of essential terms, thereby precluding the existence of an enforceable agreement. We agree that to meet the requirements of a valid contract, the document must evidence the parties' intent to be bound to it, i.e., consent to be bound. *See City of Houston v. Williams*, 353 S.W.3d 128, 143 (Tex. 2011). "That intention must be manifested in a way that justifies a promisee's understanding that a promise has been made to him." *Id.* Additionally, there must be a meeting of the minds with respect to the subject matter and essential terms of the

agreement. *In re C.H.C.*, 396 S.W.3d 33, 48 (Tex. App.—Dallas 2013, no pet.); *Wal–Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

As to her lack of consent allegation, it is disposed of by our analysis set forth above regarding Mr. Dean's authority to bind Chavez. Because the summary judgment evidence established Mr. Dean had actual authority to act on behalf of Chavez and to bind her to the agreement with his signature and Chavez failed to produce summary judgment evidence as to an absence of authority, Chavez presumably consented to be bound. As stated in *Whitmire*, "[a]n attorney retained for litigation is presumed to possess actual authority to enter into a settlement agreement on behalf of a client." 2012 WL 4815413, at *5.

As for a "meeting of the minds," the settlement agreement establishes this element of a contract as a matter of law. The letter opens by stating, "This letter will serve to confirm that the parties have reached an agreement with regard to resolution of the [case]." In addition, Merritt Clements, KC Southern's attorney, testified he engaged in settlement negotiations with Mr. Dean, who sent him the October 5, 2010 letter, which "accurately reflected the terms of the settlement we had negotiated." Other than her attempt to dispute Mr. Dean's authority to enter into the settlement agreement, Chavez did not produce any summary judgment evidence suggesting there was no meeting of the minds between Mr. Dean and KC Southern's counsel.

Finally, Chavez contends there was no enforceable agreement "because the alleged contract does not include agreement on essential terms." We agree that if a contract is not clear and certain as to all the essential terms, it fails for indefiniteness. *See Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 793 (Tex. App.—Dallas 2007, no pet.). However, "essential terms" are merely those terms the parties "would reasonably regard as vitally important elements of their bargain." *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 745 (Tex. App.—Houston [1st Dist.] 2014, no pet.). KC Southern, as noted above, produced the settlement agreement as part of its summary

judgment evidence. The agreement specifically states the parties have reached an agreement with regard to the resolution of the lawsuit, and that Chavez agreed to release all claims against KC Southern arising out of the accident for specific sums of money payable to each plaintiff. The agreement also provides for the payment of attorney's fees. Accordingly, we hold KC Southern established as a matter of law that the settlement agreement contained "essential terms." *See id.* (holding that Rule 11 agreement stating that one party would return shares of stock for a specific amount of money contained essential terms); *see also Padilla*, 907 S.W.2d at 460–61 (noting that material terms of Rule 11 settlement agreement include payment and release of claims).

In response, Chavez did not produce any summary judgment evidence to establish the agreement omitted essential terms. Nowhere in her summary judgment response or her evidence did Chavez assert the settlement agreement lacked essential terms. Thus, she has failed to preserve this issue for appeal. *See* TEX. R. CIV. P. 166a(c) ("Issue not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 105–07 (Tex. App.—Dallas 2009, pet. denied) (applying Rule 166a(c) and holding that appellant could not raise on appeal arguments not made in its response to motion for summary judgment).

### *Guardian Ad Litem*

Chavez next contends the trial court erred in granting summary judgment in favor of KC Southern because the guardian ad litem who recommended acceptance of the settlement was not appointed by the trial court by a written order, and therefore, the settlement agreement was not enforceable as to the minor plaintiff. *See* TEX. R. CIV. P. 173.4(c). In an attempt to raise a fact issue, Chavez points out the trial court appointed attorney Adriana Maddox as the minor child's guardian ad litem on November 15, 2010. However, at the May 31, 2011 hearing on the motion to enforce to the settlement agreement, the guardian ad litem's husband and law partner, Edward

Maddox, instead appeared and recommended the trial court accept the settlement offered to the minor. According to Chavez, Mr. Maddox's recommendation had no legal effect because the trial court never rendered a written order appointing him as the minor's guardian ad litem, and a guardian ad litem's recommendation to approve a settlement agreement is essential to a court's judgment. Chavez further contends — seemingly contrary to her contention that summary judgment was improper because there was no settlement recommendation by the guardian ad litem — that even if Mr. Maddox was properly appointed, a guardian ad litem was not necessary because there was no evidence that a conflict existed between her interest and that of her minor son. *See* TEX. R. CIV. P. 173.2(a), 173.4(b) (requiring determination of adverse interest and appointment of ad litem if adversity found). We hold Chavez did not preserve this issue for our review.

Because KC Southern established its entitlement to summary judgment — producing evidence that both Mr. Maddox and Mrs. Maddox approved the settlement as to the minor child at the May 31, 2011 and June 21, 2011 hearings mentioned earlier – Chavez was required to present any issues attempting to defeat KC Southern's entitlement to summary judgment in a response to the trial court. *See* TEX. R. CIV. P. 166a(c); *Pinnacle Anesthesia*, 309 S.W.3d at 105–07; *Tello v. Bank One*, 218 S.W.3d 109, 118 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *McConnell v. Southside*, 858 S.W.2d 337, 343 (Tex. 1993)). In her summary judgment response, Chavez makes no mention that summary judgment is improper because the guardian ad litem was not properly appointed. As set out above, Chavez's response challenged only Mr. Dean's authority to bind her to the settlement agreement and certain contract terms, as well as her alleged affirmative defenses, which we will discuss below. Accordingly, because Chavez failed to present this issue in her response to KC Southern's motion for summary judgment, we may not consider it as grounds for reversal. *See* TEX. R. CIV. P. 166a(c); *Pinnacle Anesthesia*, 309 S.W.3d at 105–07; *Tello*, 218 S.W.3d at 118.

*Affirmative Defenses*

Finally, Chavez argues the trial court erred in granting summary judgment in favor of KC Southern because she established as a matter of law all of the elements of at least one of her affirmative defenses. In her answer, Chavez alleged numerous "affirmative defenses." She referenced that pleading in her summary judgment response. On appeal, however, Chavez presents argument relative to only two of the so-called "affirmative defenses." Accordingly, we need only address her argument with regard to those two defenses.

As mentioned above, a plaintiff moving for summary judgment is under no obligation to negate a defendant's affirmative defenses. *Tesoro*, 106 S.W.3d at 124; *Woodside*, 154 S.W.3d at 691–92. Thus, KC Southern had no burden to address Chavez's affirmative defenses when moving for summary judgment on its breach of contract claim. *See Tesoro*, 106 S.W.3d at 124; *Woodside*, 154 S.W.3d at 691–92. To the contrary, the burden was on Chavez to raise an issue of fact on each element of her affirmative defenses. *See Tesoro*, 106 S.W.3d at 124; *Woodside*, 154 S.W.3d at 691–92.

Chavez first contends the trial court erred in granting summary judgment in favor of KC Southern because she established as a matter of law all the elements of the affirmative defense of duress. *See* TEX. R. CIV. P. 94 (setting out specific affirmative defenses that must be pled, including duress). Chavez claims Rosenthal & Watson, P.C. coerced her into entering the settlement agreement by repeatedly calling her to obtain her consent to sign the agreement on her behalf, sending a private investigator to her home with settlement documents, and ultimately, "bullying her" into submission. In support of these contentions, Chavez relies on her own affidavit wherein she testified Mr. Rosenthal pressured her and her family to settle the case in the summer of 2010 by yelling at her and sending a man to her house with settlement papers.

Duress is an affirmative defense to the enforcement of a contract. TEX. R. CIV. P. 94. However, it is a well-established principle that to invalidate an agreement based on duress, the duress must come from the *opposing party* to the agreement. *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Kosowska v. Khan*, 929 S.W.2d 505, 508 (Tex. App.—San Antonio 1996, writ denied)). It may not come from the claimant's own attorney. *Lee*, 44 S.W.3d at 154 (holding that appellant's claim that her former attorney coerced her into signing stipulation awarding ex-husband certain property failed because coercion did not come from opposing counsel); *Kosowska*, 929 S.W.2d at 508 (holding that duress invalidates contract only if coercion comes from *opposing* party, not claimant's own counsel).

In this case, Chavez specifically contends the duress emanated from Mr. Rosenthal, who she identifies as one of the lawyers from Rosenthal & Watson, P.C., a law firm she hired, among others, to represent her and her family. Thus, even if Chavez established she was coerced into entering the settlement agreement, that coercion emanated from her own attorneys, not from attorneys representing KC Southern. Chavez produced no evidence to show coercion or duress by KC Southern or its attorneys. Accordingly, Chavez failed to establish the affirmative defense of duress as a matter of law. *See Tesoro*, 106 S.W.3d at 124; *Woodside*, 154 S.W.3d at 691–92.

Chavez also contends the trial court erred in granting summary judgment in favor of KC Southern because her attorneys, Rosenthal & Watson, P.C., negligently misrepresented to the trial court that there was a valid settlement agreement when the firm allegedly knew Chavez had not agreed to the settlement. Rather than asserting a valid affirmative defense, Chavez appears to be alleging a claim of negligent misrepresentation against the attorneys involved in this case — a cause of action she never pled. Negligent misrepresentation, in the context of a claim against an attorney, is a tort in which liability is based on breach of an independent duty that a professional owes to a party as a result of the professional's manifest awareness of the party's reliance on the

misrepresentation and professional's intention that the party so rely. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999); *see also Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.—Dallas 2013, no pet.) (listing elements of negligent misrepresentation); *Miller v. LandAmerica Lawyers Title of El Paso*, 362 S.W.3d 842, 845 (Tex. App.—El Paso 2012, no pet.) (defining negligent misrepresentation as cause of action recognized in lieu of breach of contract). We express no opinion as to whether any of Chavez's attorneys might be subject to a claim of negligent misrepresentation; however, there is no affirmative defense of negligent misrepresentation in avoidance of a contract. *Cf. Soto v. Southern Life & Health Ins. Co.*, 776 S.W.2d 752, 756 (Tex. App.—El Paso 1989, no pet.) (holding that negligent misrepresentation is not affirmative defense regarding avoidance of life insurance policies). Accordingly, Chavez's assertion of the "affirmative defense" of negligent misrepresentation — even if proved — is no bar to the trial court's decision to enforce the settlement agreement by granting summary judgment in favor of KC Southern.

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in granting summary judgment in favor of KC Southern because the evidence shows the existence of a valid, enforceable settlement agreement as a matter of law, and Chavez failed to produce any evidence raising a genuine issue of material fact in this regard. She also failed to establish as a matter of law any valid affirmative defense. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice