**Opinion issued March 12, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00821-CV

_____

**CLARENT ENERGY SERVICES, INC. AND GRAHAM GILLIAM,**
**Appellants**

**V.**

**LEASING VENTURES, LLC, Appellee**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-50734**

## MEMORANDUM OPINION

Appellee Leasing Ventures, LLC, sued appellants Clarent Energy Services, Inc. and Graham Gilliam (collectively, Clarent) for breach of a lease and guaranty agreement for certain oilfield equipment. After the trial court rendered summary judgment finding Clarent liable under the Lease and setting a trial date for

determining the issues of damages and attorney's fees, the parties engaged in settlement discussions that resulted in the creation of a purported settlement agreement, also referred to by the parties as the Rule 11 agreement. Leasing Ventures moved for traditional summary judgment to enforce the settlement terms, and the trial court granted judgment in favor of Leasing Ventures, ordered specific performance of the purported settlement agreement, and ultimately awarded damages as contemplated in the purported settlement agreement.

On appeal, Clarent asserts that (1) the trial court erred in rendering a summary judgment incorporating and enforcing only a portion of the purported Rule 11 Agreement; (2) Leasing Ventures' summary-judgment evidence was insufficient to establish its right to summary judgment, including, in part, that Leasing Ventures had failed to prove as a matter of law that there was a meeting of the minds on the material terms; and (3) the trial court erred in rendering summary judgment because Clarent had provided competent proof of Leasing Venutres' prior material breach.

Because we conclude that Leasing Ventures failed to conclusively establish a meeting of the minds on the material terms between the parties to the purported settlement, we reverse the trial court's judgment in favor of Leasing Ventures' based on the motion for summary judgment asserting breach of the purported

2

settlement agreement, and we remand for further proceedings consistent with this opinion.

## Background

This dispute arises out of a 2016 lease entered into between Leasing Ventures and Clarent Energy (the Lease). Leasing Ventures agreed to lease various oilfield equipment[1] to Clarent Energy for a period of three years in exchange for lease payments that would eventually result in Clarent Energy's owning the equipment outright. The Lease was signed by Gilliam in his capacity as president of Clarent Energy, and Gilliam signed a personal guaranty, guaranteeing "the full and punctual payment and performance" of Clarent Energy's obligations under the Lease (the Guaranty). Clarent Energy made two payments under the Lease, but then failed to make any more of the required payments, and Leasing Ventures sought return of its equipment.

Leasing Ventures eventually sued Clarent for breach of the Lease and Guaranty. Leasing Ventures alleged that Clarent Energy failed to return all of the equipment, failed to notify Leasing Ventures of the location of some of the equipment, and failed to pay invoices from Leasing Ventures for additional expenses in restoring other equipment under the terms of the Lease. It alleged that Gilliam failed to pay pursuant to the Guaranty. Clarent denied these allegations,

---

[1] The Lease listed the 89 pieces of equipment by description and serial number, and it included items like "Frac Tanks," pumps, motors, and trucks.

raising defenses to enforcement of the Lease and asserting that at least some of the equipment had never been in its possession or had already been taken by agents of Leasing Ventures.

In February 2017, Leasing Ventures moved for summary judgment on its claims for breach of the Lease and Guaranty, seeking return of its equipment, damages from past and future payments due under the Lease, and court costs and attorney's fees. After considering this motion, Clarent's response, and the evidence submitted by both parties, the trial court granted a partial summary judgment in favor of Leasing Ventures on April 25, 2017. The April 25, 2017 order granted Leasing Venture's motion "in part," ordering that Leasing Ventures "has demonstrated its right to possession of certain equipment" identified in the order and requiring Clarent to deliver the equipment back to Leasing Ventures. The trial court declined to enter an award for damages, however, stating in the order, "This is an interlocutory judgment. The issues of damages and fees are to be litigated at trial."

The trial court eventually set the case for a bench trial on the issues of damages and attorney's fees during the two-week period beginning on September 18, 2017, in the month after Hurricane Harvey had struck Houston and all civil jury trials were postponed. In addition to preparing for trial in the time leading up

to this trial setting, Leasing Ventures emailed a settlement offer to the attorney of record for Clarent, David Ayers.

Leasing Ventures first emailed the settlement offer on September 7, 2017, stating, "[T]here are some further details that need to be flushed out, but the major components are in the attached word document" and in "exhibit A to this email," which itemized the remaining equipment that needed to be returned. The word document referenced in the email and attached with Leasing Ventures' evidence provided a "proposal outline" of "Agreed Judgment Terms":

- Damages for past due lease payments (through 12/15/2017): $211,235.00 (with all credits and payments reflected)
- Damages for future rent, reduced to present Value (1/15/2018-4/15/2019): $302,500.00
- Attorney' Fees: $55,000.00
- Post Judgment interest: 6% from the date of entry of the Judgment.
- Costs of Court.

The proposed settlement further stated that the parties would agree to continue the trial setting for ninety days and would use that time to "work together to locate and retrieve all of the equipment in exhibit A":

> For each piece of equipment that is confirmed as located and retrieved in this time period, Mr. Gilliam will receive a direct credit to the Agreed Judgment for the value of the equipment as listed in Exhibit A. The value of the equipment on this Exhibit is greater than the amount of damages in the Agreed Judgment. Mr. Gilliam can reduce his liability to zero by helping to locate and recover less than all of the equipment on the list.

The proposal further stated that if, within the 90-day continuance, the parties had made "substantial progress"—defined as recovering 48 pieces of equipment (or 75% of the equipment listed in the accompanying exhibit) or equipment totaling at least $430,000 in value as determined in the accompanying exhibit—they agreed to "another 90 day period to continue their efforts." If substantial progress had not been made, the parties agreed to enter the Agreed Judgment rather than proceed to trial, but "all credits for equipment recovered in this period shall be reflected in the Agreed Judgment entered." Finally, the proposal stated, "If Mr. Gilliam has reduced his personal liability to zero through the recovery and location of the equipment in Exhibit A, then the parties agree to dismiss the case with prejudice and the Agreed Judgment will not be entered." The proposal also stated that "[a]ny dismissal with prejudice would not prejudice Leasing Ventures rights to the remaining equipment" should it be found at a later date. It provided for a release of any claims against Leasing Ventures by Clarent, and it provided that Leasing Ventures would "release" both Clarent Energy and Gilliam "upon issuance of any non-suit with prejudice."

The list of equipment attached to the September 7, 2017 settlement offer email specifically identified 65 pieces of equipment by description and serial number and included a value to each item or group of items. For example, the list identified five "Used Wichita Frac Tanks" by their serial numbers and asserted a

6

value of $30,000 for the five tanks. Leasing Ventures described the 65 items identified in this list as the equipment that had not yet been accounted for or returned following the trial court's April 25, 2017 order requiring Clarent to return certain property to Leasing Ventures.

Attorneys for Clarent and Leasing Ventures exchanged emails over the next week, indicating that they hoped to settle the case and addressing concerns. For example, Ayers and Diane Werlein, who is Gilliam's wife and an attorney who acted on behalf of Clarent in connection with the litigation, asked questions regarding the proposed settlement terms on September 11, 2017, such as, "Why is the list of 'lost' equipment getting smaller but the amount of the past due and future rent [is] not getting any smaller?" Attorneys for Clarent further stated:

> If, as according to Graham [Gilliam], LV already has control of a bunch of this equipment (ie: through [a third party], etc.) what keeps **them** from impeding the retrieval or moving the equipment to a location where it cannot be found, then [Gilliam] is again stuck with the $525K Agreed Jdmt? Something doesn't seem right and it seems like he is getting set up for disaster. All good for LV—they get the equipment and the full rental?
> Maybe we all need to have a meeting so you can explain to [Gilliam] why this is a good idea and he can explain his concerns. He is more than willing to help locate the equipment but it seems like they are getting the equipment and the rental money—when, from my understanding, the lease is basically a rent to own scenario?

On September 12, 2017, Werlein emailed Leasing Ventures' counsel stating:

> I would just like to thank you for your efforts and to let you know that Graham [Gilliam] wants to find a way to settle this matter. He does not have any problem helping locate the equipment and will do

7

anything to that end. He is concerned how he is going to get credited for the equipment already found as well as equipment found moving forward.

Leasing Ventures responded the following day reiterating its understanding of the Lease obligations and the offer to provide a credit against an agreed judgment only for the still-missing equipment.

Clarent produced an email dated September 12, 2017, from Ayers to Gilliam and Werlein stating, "I am preparing a motion to withdraw and plan to file around noon." On the morning of September 13, 2017, Ayers purportedly sent an email to Gilliam and Werlein with an attached a letter stating, "This letter will serve as notice that David Ayers with the firm of Werner Ayers, LLP is withdrawing as attorney of record for Defendants, Clarent Energy Services, Inc. and Graham Gilliam (the "Clients") in the referenced case. The Clients do have the right to object." There is no indication that this letter was ever filed with the Court or that Leasing Ventures was made aware of this email and letter until several weeks later during the litigation process.

Rather than moving forward with a withdrawal at that time, the record reflects that Ayers continued to represent Clarent. In an email on September 13, 2017, at 4:38 p.m., Ayers emailed Leasing Ventures regarding settlement negotiations stating:

> [I]t took a lot of tail twisting but we have a deal in principal. As you mention there are some details we need to work out but so long as our

folks are committed to working together to maximize the equipment recovery those should be fairly simple to paper. Let's talk in the morning.

The next afternoon Leasing Ventures sent an email to Ayers:

David - I called the coordinator but was unable to reach him. I propose below email to convey our agreement and request to the court.

Mr. Syptak [the court coordinator],

I represent the Plaintiff [Leasing Ventures] in this case and have copied Defendants' [Clarent's] counsel to this email. We are currently set for trial in the two weeks beginning on Monday September 18, 2017. I am emailing you to let you know that we have reached a settlement agreement and that we would like to request that the Court retain this case on its docket for an additional 180 days (on or about March 19, 2018) so that the terms of the settlement agreement may be effectuated. At the end of the 180 days, or possibly sooner, there will be either an agreed judgment to be entered by the Court or a dismissal with prejudice of all claim.

Ayers responded, "That works. Thanks." Leasing Ventures then sent the proposed email to the trial court coordinator.

On September 21, 2017, Leasing Ventures sent another email to Ayers with formalized settlement documents, stating, "This is still in review on my side as well, but I wanted to send it over to you so you could start working on it. Just a heads up we may have a few more changes as well. I am trying to get this accomplished as quickly as possible so our guys have as much time as possible to work together." This email had attachments of the proposed Agreed Judgment and

9

restated the proposed settlement terms in a document entitled "Settlement Agreement and Release."

On September 22, 2017, Diane Werlein notified the parties by email that she was withdrawing as counsel for Clarent. The attorney for Leasing Ventures responded, "As far as we are concerned, this matter is settled. So long as David [Ayers] is still our contact person for settlement and all things case related, and it doesn't interfere with our getting this deal executed, we have no objection." Werlein responded, "I am also assuming this matter is settled; however, I want to follow through with the withdrawal. As in the past, David is still the contact person and my withdrawal should not interfere with anything."

Also on September 22, 2017, Ayers responded to Leasing Ventures' email sending the proposed settlement documents, stating, "I have taken a look and run it by Diane [Werlein] and Graham [Gilliam]. I'll get back with you once I have heard from them. I think this is pretty close though there may be some tweaks and additional ideas to discuss to refine as you mention."

On September 26, 2017, Ayers emailed Leasing Ventures with questions regarding the settlement terms:

> OK. I am waiting on Diane for final—been swapping emails with her today. Here are my two thoughts for you to consider if you have not already.
>
> 1 regarding the court—if it won't give us time (I really don't suspect that will be a problem) and we are still working together towards final

resolution, can we do a tolling agreement to keep from having to file the judgment?

2 the cooperation language is a bit confusing. Seems it is in a passive voice. Don't know if that is intentional or not. Do we need to discuss? I prefer something more affirmative that applies to both sides.

Overall I think we are close.

Clarent's attorney also asked Leasing Ventures for "the current equipment list that will be exhibit 'C'" to the settlement agreement, again stating, "We are getting close."

Leasing Ventures responded to these emails by sending the requested exhibit, although it does not appear in the summary-judgment record, and by answering the concerns regarding the tolling agreement and cooperation language. Leasing Ventures further stated, "Any other items of concern? Nothing should really be surprising here, they were mostly laid out prior to acceptance of the offer. Please let me know."

The settlement agreement was never executed by the parties. Instead, the parties and their attorneys met on October 4, 2017. At this meeting, Gilliam expressed his belief that the parties had never entered into a settlement agreement and refused to honor the agreement reached though the email exchanges. Following this conversation, on October 10, 2017, Ayers filed with the trial court a motion to withdraw as counsel for Clarent.

On October 16, 2017, Leasing Ventures amended its petition to assert a claim against Clarent for breach of the purported settlement agreement, also referred to as a Rule 11 agreement, in addition to its claims for breach of the Lease and Guaranty. Leasing Ventures also moved again for summary judgment, this time on its claim for breach of the purported settlement agreement.

As evidence supporting its motion, Leasing Ventures provided "Exhibit A" which it called the "Rule 11 Agreement." This exhibit contained 38 pages of emails and attachments exchanged between the parties between September 7, 2017, when Leasing Ventures made its settlement offer, and September 26, 2017, when Ayers represented that the parties were "close" to an agreement and Leasing Ventures sent the updated equipment list that would be incorporated into the final settlement agreement. Leasing Ventures asserted in its motion for summary judgment that "[t]he series of emails and their attachments contained the material terms of the agreement reached between the parties, and has been filed of record in this proceeding," and that "[t]he series of emails also confirmed that a settlement had been reached between the parties." Leasing Ventures further stated that it had "tendered performance in that it passed its trial setting and requested a reset of 180 days" and "has also been prepared to work with [Clarent] in locating and retrieving the equipment under the terms of the Rule 11 Agreement." It asserted that Clarent breached the agreement by announcing that it would not honor the settlement terms

12

and would not consent to entry of the proposed agreed judgment should it fail to return enough equipment to reduce the amount of its liability to zero. Leasing Ventures requested that the trial court grant summary judgment against Clarent on the claim for breach of the purported settlement agreement and that the court assess damages based on the proposed agreed judgment referenced in the settlement discussions. Leasing Ventures also sought additional costs and attorney's fees incurred in enforcing the settlement agreement.

Clarent responded and denied agreeing to the settlement. It supported its response with a series of communications, including some of the emails set out above and Ayers' withdrawal emails. Clarent also provided affidavits of Werlein and Gilliam averring that Clarent had never agreed to the terms of the proposed settlement. Clarent later supplemented its response, asserting that the purported settlement agreement was not enforceable as a Rule 11 agreement and that the evidence did not conclusively establish the existence of an enforceable contract—specifically arguing that the parties had not had a meeting of the minds on all material terms. Clarent also asserted that Ayers lacked authority to bind Clarent at the time of the purported settlement agreement and that Leasing Ventures had materially breached any purported settlement agreement by failing to cooperate with Clarent regarding relocation of the missing equipment.

On October 31, 2017, the trial court granted Ayers' motion to withdraw as attorney.

On December 14, 2017, the trial court granted Leasing Ventures summary judgment on breach of the settlement agreement in part. It ordered the parties to specifically perform under the settlement by cooperating to return equipment to Leasing Ventures and stayed the proceedings to allow the parties to effectuate the agreement. The order further stated that if substantial progress, as defined in the parties' settlement agreement, "has not been made on or before December 17, 2017, then all further matters in the case are abated until March 19, 2018, at which time [Leasing Ventures] may move for entry of a judgment against [Clarent] or the Parties may enter a non-suit of all claims and causes herein with prejudice."

Clarent filed a notice of appeal in January 2018, challenging the December 14 order in addition to the trial court's previous April 25, 2017 order on liability under the Lease and several other interlocutory orders. This Court subsequently dismissed this appeal for lack of jurisdiction. *See Clarent Energy Servs., Inc. v. Leasing Ventures, LLC*, No. 01-18-00036-CV, 2018 WL 4087003, at *1 (Tex. App.—Houston [1st Dist.] Aug. 28, 2018, no pet.) (mem. op.).

After allowing the time for performance ordered by the trial court, Leasing Ventures moved again for summary judgment, asking the trial court to render final judgment in favor of Leasing Ventures. On August 13, 2018, the trial court

14

rendered its second interlocutory summary judgment, granting this motion for summary judgment and awarding damages to Leasing Ventures consistent with the terms of the purported settlement agreement. It awarded $449,735 in actual damages plus trial-level attorney's fees. However, the trial court determined that there were still fact questions remaining regarding conditional appellate-level attorney's fees. The parties stipulated to the amount of appellate-level attorney's fees, and on November 28, 2018, the trial court rendered final judgment in favor of Leasing Ventures, including an award of conditional appellate attorney's fees.

## Summary Judgment

Clarent asserts several grounds to support its contention that the trial court erred in granting summary judgment in favor of Leasing Ventures on its claim for breach of the purported settlement agreement.

### A. Standard of Review

We review the trial court's grant of a summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Thus, a plaintiff moving for

15

summary judgment on of its own claim must conclusively establish each element of that claim. *Leonard v. Knight*, 551 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland v. Taylor*, 397 S.W.3d 683, 697 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827); *Cleveland*, 397 S.W.3d at 697. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *Cleveland*, 397 S.W.3d at 697. A genuine issue of material fact is raised when the nonmovant produces more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). More than a scintilla of evidence exists when reasonable and fair-minded

individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

**B.      Enforceability of Purported Settlement Agreement**

Clarent challenged the trial court's grant of summary on Leasing Ventures' claim that it breached the purported Rule 11 settlement agreement. In its second issue, among other arguments, Clarent asserts that the purported settlement agreement was not enforceable because Leasing Ventures failed to conclusively establish a meeting of the minds among the parties as to all essential terms.

Litigants' Rule 11 agreements are contracts relating to litigation. *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam). Texas Rule of Civil Procedure 11 provides that agreements between attorneys or parties touching any pending suit must be in writing, signed, and filed with the papers as part of the record, or made in open court and entered of record. TEX. R. CIV. P. 11. To be effective, a Rule 11 agreement must consist of a written memorandum which is complete within itself in every material detail and which contains all the essential elements of the agreement. *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561. The enforcement of a written settlement agreement is governed by principles of contract law. TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a). Thus, we construe Rule 11 agreements under the same rules as a contract. *Shamrock Psychiatric Clinic*, 540 S.W.3d at

17

560; *see Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)).

A plaintiff claiming breach of contract must prove: (1) the existence of a valid contract; (2) performance or tendered performance; (3) the defendant's breach; and (4) damages as a result of the breach. *Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 385 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Id.* (quoting *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied)).

Thus, the existence of a valid contract is one of the essential elements of a breach-of-contract claim. *See id.* Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 192, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("A meeting of the minds is necessary to form a binding contract.").

While the enforceability of an agreement is generally a question of law, the issue of whether parties intended to make a contractual agreement is usually a fact issue. *See Gaede v. SK Invs., Inc.*, 38 S.W.3d 753, 757–58 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221–22 (Tex. 1992) (whether parties formed contract is generally fact question, although it may be determined as a matter of law); *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988) (whether parties intended to enter into binding agreement is often question of fact).

An enforceable and legally binding contract exists if it is sufficiently definite, certain, and clear in its essential terms. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *T.O. Stanley Boot Co.*, 847 S.W.2d at 221. Furthermore, the parties must have a meeting of the minds and must communicate consent to the essential terms of the alleged agreement. *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Angelou v. African Overseas Union*, 33 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("The parties must agree to the same thing, in the same sense, at the same time.").

"'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex.

19

App.—Fort Worth 2008, pet. dism'd) (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied)). "Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract." *Id.* (citing *T.O. Stanley Boot Co.*, 847 S.W.2d at 221). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. *Baroid Equip., Inc.*, 184 S.W.3d at 17; *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 348 (Tex. App.—Fort Worth 1996, no writ) (stating that whether conduct exhibits acceptance is question of fact for trier of fact). In order to make this objective determination, we must necessarily review "the communications between the parties and . . . the acts and circumstances surrounding those communications." *Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied).

Here, Clarent asserts that movant Leasing Ventures failed to prove that the purported settlement agreement was enforceable as a matter of law, in part because "[t]here was no meeting of the minds; further, the purported Rule 11 Agreement was not agreed to by Clarent Energy, and to the extent, if at all, it was agreed to by prior counsel [David Ayers], prior counsel had no authority to enter it." We agree with Clarent that Leasing Ventures' summary judgment evidence failed to

20

establish a meeting of the minds as a matter of law; accordingly, we need not address Clarent's contention regarding Ayers' authority to bind it.

Leasing Ventures argues that Clarent and Gilliam accepted the settlement agreement, pointing to the September 13, 2017 email from Clarent's counsel at the time, Ayers:

> [I]t took a lot of tail twisting but we have a deal in principal [*sic*]. As you mention there are some details we need to work out but so long as our folks are committed to working together to maximize the equipment recovery those should be fairly simple to paper. Let's talk in the morning.

This email, however, does not conclusively establish Clarent's "mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *See City of The Colony*, 272 S.W.3d at 720. By stating that the parties had a deal in principle and using other equivocal language, such as recognizing that there remained details to work out that "should" be simple to address, counsel's statement does not demonstrate a meeting of the minds on the material terms as a matter of law, but could be interpreted as recognizing the continued negotiations of the parties. This is especially true in light of the standard of review on summary judgment, which requires that we indulge all reasonable inferences in favor of Clarent as the nonmovant. *See Dorsett*, 164 S.W.3d at 661; *City of Keller*, 168 S.W.3d at 827.

Leasing Ventures points to other emails to support its contention that the parties had mutually agreed to be bound by the proposed settlement agreement. It cites Leasing Ventures' email to the trial court coordinator—approved by Ayers—stating that the parties had "reached a settlement agreement," and "we would like to request that the Court retain this case on its docket for an additional 180 days (on or about March 19, 2018) so that the terms of the settlement agreement may be effectuated." It also cites the exchange between Werlein and Leasing Ventures following Werlein's notice of withdrawal, in which Leasing Ventures stated, "As far as we are concerned, this matter is settled. So long as David [Ayers] is still our contact person for settlement and all things case related, and it doesn't interfere with our getting this deal executed, we have no objection," and Werlein responded, "I am also assuming this matter is settled. . . ."

However, as stated above, these emails do not communicate assent to the essential settlement terms as a matter of law. They could also indicate only that Clarent was still attempting to reach final settlement terms. And any indication of intent to be bound expressed in these emails is undermined by other communications in the same chain of emails, such as Ayers' email on September 22 stating that he was still waiting to hear from his clients, but he thought "they were pretty close" to an agreement. Similarly, Ayers' email on September 26 raised concerns about what the parties would do if the trial court refused to allow

22

time for them to carry out the proposed settlement and concerns about the "cooperation language," again stating, "Overall I think we are close." And as late as September 27, Ayers sought clarification from Leasing Ventures regarding the exact list of equipment that would be included in the proposed settlement.

Taken as a whole and in their context, these emails do not conclusively establish a meeting of the minds between Leasing Ventures and Clarent Energy. *See Baroid Equip., Inc.*, 184 S.W.3d at 17 (we consider whether there was a meeting of the minds by considering what the parties said and did and not on their subjective state of mind); *Copeland*, 3 S.W.3d at 605 (holding that we make objective determination regarding meeting of minds by reviewing "the communications between the parties and . . . the acts and circumstances surrounding those communications."). Clarent asserts in its brief on appeal that "[t]he slew of emails that Leasing Ventures attached [to its summary judgment motion] constitute mere negotiations both before and after Leasing Ventures unilaterally announced to the [trial court] that the case was settled by email on September 13, 2017." Construing these emails in the light most favorable to Clarent as the nonmovant—as we must—we conclude that the trial court erred in determining that Leasing Ventures had proven, as a matter of law, that the parties had mutually agreed to the terms of the proposed settlement agreement.

Leasing Ventures compares its case to *Padilla v. LaFrance* and *Green v. Midland Mortgage Co.* in arguing that, as a matter of law, the settlement agreement was a valid and enforceable contract. Those cases are distinguishable, however, on the issue of meeting of the minds. In *Padilla*, the supreme court held that a series of letters exchanged between the parties was sufficient to constitute an agreement in writing satisfying Rule 11. 907 S.W.2d 454, 460–61 (Tex. 1995). In so holding, the supreme court observed that the letters specifically confirmed a settlement agreement between the parties and contained all the material terms of the agreement, observing that

> Bradshaw's letter—faxed to Steidley on the afternoon of April 23— agreed to pay the $40,000 policy limits, specifically confirming a "settlement agreement" between the parties. That letter, however, noted uncertainty as to one detail, payment of the hospital lien. . . . Steidley responded that same day with a letter indicating that plaintiffs would pay the hospital lien out of the settlement funds, specifically stating that "[t]his letter will confirm that the above referenced matter *has been settled* for all applicable policy limits."

*See id.*

Likewise, in *Green*, a series of emails between the litigants and a "Rule 11 letter" filed with the court "confirmed a settlement agreement between the parties" as to all material terms of the agreement. 342 S.W.3d 686, 691 (Tex. App.— Houston [14th Dist.] 2011, no pet.). The consent to the agreement expressed in the emails was unequivocal:

In answer to Weston's e-mail to Leyh requesting that Leyh "please confirm that we have a deal to settle this case," Leyh responded "[y]es, we have a settlement." Weston then replied "[g]reat, clients have agreed to those terms." Further, the Rule 11 letter signed by Weston and Leyh, and filed with the court the following day, stated that the parties had settled the Greens' claims. Moreover, the e-mail exchange reflects all the material terms of the agreement: Midland and Barrett Burke agreed to pay the Greens $40,000 in exchange for the settlement and release of all claims between the parties.

*Id.*

Here, by contrast, the emails between the parties do not confirm an agreement to settle the claims on any specific terms. Clarent stated, at times, that there was an agreement in principle and that the parties were "close" to an agreement, and Clarent did not object to Leasing Ventures' counsel's attempts to reset the approaching trial setting based on the settlement negotiations. But this is not the same as the unequivocal statement, "Yes, we have a settlement" as to specific terms that was present in the *Green* case. *See id.* And unlike the *Green* case, the parties here continued to communicate regarding the terms of settlement—such as the nature of the "cooperation language" and the precise list of equipment that was subject to the settlement agreement—until the negotiations between Leasing Ventures and Clarent broke down.

We conclude that Leasing Ventures failed to establish that there was a meeting of the minds between the parties as to all material terms of the settlement as a matter of law. *See Leonard*, 551 S.W.3d at 909. Thus, the trial court erred in

25

granting summary judgment in favor of Leasing Ventures on its claim for breach of the purported settlement agreement. We sustain Clarent's second issue to the extent it argues that Leasing Ventures failed to establish as a matter of law a meeting of the minds between the parties on the material terms. Because none of Clarent's remaining issues can afford it any greater relief, we need not address its remaining contentions on appeal. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this appeal.

Richard Hightower
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.